449 A.2d 720

**Eugene M. LITMAN, individually and trading as Riverview Park Associates, a Pennsylvania Limited Partnership, Appellant,**

**v.**

**The PEOPLES NATURAL GAS COMPANY, a Pennsylvania Corporation.**

Superior Court of Pennsylvania.

Argued April 26, 1982.

Filed Aug. 20, 1982.

Petition for Allowance of Appeal Denied Feb. 23, 1983.

346

John M. Tighe, Pittsburgh, for appellant.

John R. Kenrick, Pittsburgh, for appellee.

Before BECK, MONTEMURO and POPOVICH, JJ.

POPOVICH, Judge:

Appellant, Eugene Litman, appeals from the order of the court en banc denying his motion for a new trial and for partial judgment n.o.v., and which affirmed the trial court's grant of appellee's motion for a directed verdict. We affirm.

As we said in *Continental Super Market Food Service, Inc. v. Soboski,* 210 Pa.Super. 304, 309, 232 A.2d 216, 219 (1967):

"On a motion for a directed verdict, the facts must be considered in the light most favorable to the party against whom the motion is made. '... [T]he court must accept as true all the evidence of that party which supports his contention ... and must reject all the adverse testimony of the party seeking a directed verdict.' *Lott v. Guiden,* 205 Pa.Super. 519, 523, 211 A.2d 72, 74 (1965)."

Additionally, "[a]s to reviewing on appeal the grant or refusal of a new trial, we will not reverse the lower court's action ' "absent an abuse of discretion or error of law which controlled the outcome of the case." ' " (Citations omitted) *McDevitt v. Terminal Warehouse Co.,* 304 Pa.Super. ——, ——, 450 A.2d 991, 993 (1982).

In light of the preceding standards, our review of the facts, which are not in dispute, reveal the following: On

July 11, 1973, appellant purchased sixty acres of farmland, upon which was situated a single family dwelling, from Nancy E. Wunderly. Thereafter, by deed dated August 15, 1975, appellant conveyed 16 acres of the property to Riverview Park Associates—this entity was a limited partnership of which appellant was its general partner. By the end of 1976, appellant had erected a 168-unit apartment complex on the acreage owned by Riverview Park Associates. The site consisted of ten separate buildings, which were made up of one and two-bedroom apartments. To regress a bit, back in the fall of 1974, appellant had requested Peoples Natural Gas (PNG) to provide gas service to the proposed construction. In January, 1975, PNG notified appellant that it was prohibited by Orders of the Public Utility Commission (PUC), issued at PUC Investigation Docket No. 124, from providing him with the requested gas service. The Order in question, which was promulgated to deal with a shortage of natural gas in this Commonwealth, provided:

"That every such gas utility is hereby prohibited from entering into any contract for serving gas to any gas-burning equipment after February 15, 1972, unless either (a) the most recent report submitted pursuant to paragraphs 1 and 2 shows that in every year covered by the report such gas-burning equipment can be supplied without causing annual or peak day deliveries to exceed annual or peak day supplies, or (b) the contract for serving the gas-burning equipment expressly provides that such service may be curtailed, interrupted or terminated upon twenty-four hours notice, or (c) such gas-burning equipment is a replacement of other gas-burning equipment installed prior to February 16, 1972, and is of the same or less gas-burning capacity than the replaced equipment." (R. 29a–30a).

Appellant, in response to PNG's refusal to supply him with the requested service, had to resort to the utilization of propane gas to supplement the increased gas needs of the project. In addition, in June of 1976, appellant filed a Complaint in Assumpsit against PNG in the Court of Com-

mon Pleas of Allegheny County, Pa. In said Complaint, appellant sought judgment against PNG for damages in an amount in excess of $10,000.00 for its failure to abide by a 1940 right-of-way agreement executed by PNG and appellant's predecessor in title (Mrs. Wunderly), wherein the utility company agreed to let the then owners of the realty (Nancy Wunderly and her husband) have the "right to purchase gas from [the] line" it was to lay across the property. (See plaintiff's [appellant's] Complaint, Exhibit "A"). PNG, in its Answer and New Matter argued that, inter alia, "the Court of Common Pleas lacked jurisdiction of [appellant's] claim[ ]" and "that [PNG] was prohibited by the PUC Orders entered at Investigation Docket No. 124 from providing natural gas service to [appellant's] 168-unit apartment complex and thus, the defense of impossibility of performance was available to [PNG] and, as a matter of law, rendered it not liable to [appellant]." (Appellee's Brief at 3) The trial court denied appellee's former contention, but agreed with the latter averment and entered a directed verdict in its favor at the close of the case.

Although appellant asserts numerous arguments in favor of finding that the court en banc's affirmance of the trial court's order was in error, we find that a response to the "impossibility of performance" argument is dispositive of the case, and, thus, the other contentions raised by the appellant need not be addressed.

Before dealing with appellant's claim, we find it appropriate to respond to PNG's contention, which it argued below and extensively discussed in its Brief to this Court, that "[t]he matter now before this Court [Superior Court] was a matter peculiarly within the expert cognizance of the PUC and should have been heard by that administrative body rather than the Court of Common Pleas." "Accordingly, [PNG] respectfully submits that his action should be dismissed for lack of jurisdiction over the subject matter." (Appellee's Brief at 13 & 14) We do not agree.

The extent of the PUC's jurisdiction has been clearly delineated by the courts of this Commonwealth, one of

which was *Allport Water Authority v. Winburne Water Co.*, 258 Pa.Super. 555, 393 A.2d 673 (1978), wherein we stated:

"We start with the principle 'that the courts will not originally adjudicate matters within the jurisdiction of the PUC. Initial jurisdiction in matters concerning the relationship between public utilities and the public is in the PUC—not in the courts.' *Lansdale Borough v. Philadelphia Electric Company*, 403 Pa. 647, 650, 170 A.2d 565, 567 (1961). See also *Chester County v. Philadelphia Electric Company*, 420 Pa. 422, 218 A.2d 331 (1966); *Einhorn v. Philadelphia Electric Company*, 410 Pa. 630, 190 A.2d 569 (1963); *Fogelsville & T. Electric Company v. Pa. P. & L. Company*, 271 Pa. 237, 114 A. 822 (1921); *Byer v. Peoples Natural Gas Company*, 251 Pa.Super. 75, 380 A.2d 383 (1977); *Bell Telephone Company v. Sanner*, 248 Pa.Super. 273, 375 A.2d 93 (1977); *Elkin v. Bell Telephone Company*, 247 Pa.Super. 505, 372 A.2d 1203 (1977). Thus, it has long been recognized that the reasonableness, adequacy and sufficiency of public utility service are all matters within the exclusive original jurisdiction of the PUC. See *Duquesne Light Company v. Monroeville Borough*, 449 Pa. 573, 298 A.2d 252 (1972); *Behrend v. Bell Telephone Company*, 431 Pa. 63, 243 A.2d 346 (1968); *Elkin v. Bell Telephone Company, supra. It is equally well-settled, however, that the PUC is not jurisdictionally empowered to decide private contractual disputes between a citizen and a utility.* See *Byer v. Peoples Natural Gas Company*, supra; *Leveto v. National Fuel Gas Distribution Corporation*, 243 Pa.Super. 510, 366 A.2d 270 (1976); *Reading & Southwestern Street Railway Company v. Pennsylvania PUC*, 168 Pa.Super. 61, 77 A.2d 102 (1950)." (Emphasis added) *Id.*, 258 Pa.Superior Ct. at 558–59, 393 A.2d at 674–75.

Additionally, in *Behrend v. Bell Telephone Co.*, 242 Pa.Super. 47, 363 A.2d 1152 (1976), *vacated and remanded on other grounds*, 473 Pa. 320, 374 A.2d 536, *appeal after remand*, 257 Pa.Super. 35, 390 A.2d 233, a telephone customer sought to recover damages for the omission of his name from Bell's

directories and the directory assistance operators' lists, and for the disruption of his telephone service. Bell argued that the lower court erred in permitting a jury to proceed to the merits of the case since Behrend's allegations raised questions within the exclusive original jurisdiction of the PUC. After a studied consideration of the Public Utility Law and the decisions of our courts thereunder, we concluded that the regulatory authority of the PUC over utility service *did not* remove from the court's jurisdiction an action for damages based on a failure of service. Rather, we held:

"The courts retain jurisdiction of a suit for damages based on negligence or breach of contract wherein a utility's performance of its legally imposed and contractually adopted obligations are examined and applied to a given set of facts." (citation omitted) (footnote omitted) *Id.* 242 Pa.Super. at 59, 363 A.2d at 1158.

Instantly, we had a Complaint in Assumpsit being filed by the appellant, in which he alleged the violation of a contractual agreement by a utility company, the result of which he claimed necessitated his utilizing an alternative form of energy (propane) to fuel his apartment complex. As a result of the purported contractual breach, appellant sought restitution in the form of damages to compensate him for the money he expended over and above what it would have cost him to operate the complex had the utility company provided the increased gas service requested. Consequently, given the issues at bar, the fact that the PUC is not jurisdictionally empowered to decide private contractual disputes between a citizen and a utility, and because the relief sought was in the form of damages, we find that the trial court had jurisdiction to resolve the controversy. *Allport Water Authority v. Winburne Water Co., supra; Behrend v. Bell Telephone Co., supra.*

We now turn our attention to the appellant's argument that the trial court erred in directing a verdict for the appellee on its defense of impossibility of performance.[1]

1. Appellant raises various other contentions which we find do not warrant the relief requested.

Recently, in *Kasemer v. National Fuel Gas Dist. Corp.*, 279 Pa.Super. 334, 421 A.2d 226 (1980) the Court was confronted with an issue similar to the one proffered by the appellant, i.e., the operators of a mobile home park sought recovery of damages against a gas company for its refusal to supply service in violation of an alleged contract between the utility and Kasemer. The basis of the gas company's refusal was also the PUC's February 1, 1972 order, reproduced *supra*, forbidding the gas company to take on additional customers beyond its peak capacity.

In *Kasemer*, as in the case here, the gas company contended that it was relieved from liability to the complainant for failure to supply the increased service on the basis of Section 458 of *The Restatement of the Law of Contracts*, which reads in pertinent part:

"A contractual duty or a duty to make compensation is discharged, in the absence of circumstances showing either a contrary intention or contributing fault on the part of the person subject to the duty, where performance is subsequently prevented or prohibited

... (b) by a judicial, executive or administrative order made with due authority by a judge or other officer of the United States, or of any one of the United States."

We agreed with the gas company's argument in *Kasemer*, and find no reason to deviate from such decision in ruling in favor of PNG instantly.

The appellant, as noted in the facts recounted *supra*, was informed by PNG in the fall of 1974 that it was foreclosed from providing the increase in service requested for the proposed apartment complex. Such denial was predicated upon the PUC's Order at Investigation Docket No. 124, which prohibited every gas utility "from entering into any contract for serving gas to any gas-burning equipment after February 15, 1972." (R. 29a) Adherence to such directive by a public utility is mandated by the Public Utility Code. *See* 66 Pa.C.S.A. § 501(c).[2] To rebut this seemingly insur-

2. Section 501(c) provides:

mountable hurdle, appellant submits that the 1940 right-of-way agreement, entered into by Mrs. Wunderly and her husband—appellant's predecessor in title—and the appellee, permitted the appellant "the right to purchase gas from the [appellee's] line, and not merely the right to *enter into a contract with the [appellee]* for the purchase of gas." (Emphasis in original) (Appellant's Brief at 17) We do not agree with such assertion. As correctly articulated by the lower court on this point:

"On ... February 1st, 1972 [the PUC] issued an order which stated in paragraph four that every ... gas utility is hereby prohibited from entering into any contract for serving gas to any gas burning equipment after February 15, 1972 unless certain things, none of which occurred [here].

... I agree ... that the only right that [appellant] would have had, if any, was the right to enter into a contract for the purchase of gas." (R. 173a)

Additionally, the lower court went on to hold:

"[W]hatever rights came to [appellant] by virtue of the right of way agreement of May 31, 1940 and the subsequent conveyance of the real estate which was involved in that right of way were impossible of fulfillment by [PNG] under the then existing regulations of the PUC and there was, as a matter of law, the defense of impossibility of performance existing and is available irrespective of the actual meaning of the agreement and irrespective of what right [appellant] might have acquired thereby." (R. 175a)

We are in accord with the view expressed by the lower court. *See Burkus v. Henshall,* 386 Pa. 478, 481, 126 A.2d 722, 724 (1956); *Olyphant Borough School Dist. v. American Surety Co. of New York,* 322 Pa. 22, 184 A. 758 (1936).

"(c) **Compliance.**—Every public utility, its officers, agents, and employees, and every other person or corporation subject to the provisions of this part, affected by or subject to any regulations or orders of the commission or of any court, made, issued, or entered under the provisions of this part, shall observe, obey, and comply with such regulations or orders, and the terms and conditions thereof."

Moreover, we read appellant's request for increased service as an offer to PNG to enter into a contract regarding the 168-unit apartment complex. However, since the PUC Orders issued at Investigation Docket No. 124 prohibited PNG "from entering into any contract for serving gas to any gas burning equipment after February 15, 1972," PNG was legally precluded from providing the gas service which appellant requested. *See Kasemer v. National Fuel Gas Dist. Corp., supra,* 279 Pa.Super. at 336, 421 A.2d at 229. Furthermore, inasmuch as PNG complied with the PUC Orders in good faith, it is not open to liability for damages as a result of such compliance. *Id.*

Based on the preceding, we affirm the order of the court en banc denying appellant's motion for a new trial and for partial judgment n.o.v.