479 A.2d 548

**Charles S. MORROW, individually and on behalf of all others similarly situated, Appellant,**

**v.**

**The BELL TELEPHONE COMPANY OF PENNSYLVANIA.**

**Charles S. MORROW, Appellant,**

**v.**

**The BELL TELEPHONE COMPANY OF PENNSYLVANIA, a corporation.**

Superior Court of Pennsylvania.

Argued Nov. 29, 1983.

Filed June 22, 1984.

278

Mark B. Aronson, Pittsburgh, for appellant.

J. Tomlinson Fort, Pittsburgh, for appellee.

Before ROWLEY, WIEAND and HESTER, JJ.

WIEAND, Judge:

Charles S. Morrow filed two civil actions against The Bell Telephone Company of Pennsylvania (hereinafter "Bell"). The complaint in one action was in equity and sought class action certification; the complaint in the other action claimed individual damages for tortious and/or contractual wrongs allegedly committed upon Morrow by Bell. Bell filed preliminary objections to both complaints. In the equity action, the court concluded that subject matter jurisdiction was vested exclusively in the Pennsylvania Public Utility Commission. Therefore, it dismissed the action. A similar conclusion was reached in the other action with respect to some but not all causes of action alleged. Morrow appealed, and both appeals were consolidated for argument in this Court. We affirm the order entered in the first action but reverse the second.

Appellant's action in equity sought to challenge Bell practices relating to tolls charged for calls made to Bell's offices during non-business hours [1] and to security deposits required by Bell before it would resume telephone service previously suspended. The action requested damages and injunctive relief on behalf of appellant and all subscribers to telephone service assigned the "364" exchange within the "412" area code.[2]

1. During non-business hours, incoming calls were received and responded to by an answering machine, which advised the caller that Bell's offices were closed. Such calls were deemed to be completed calls, and coins deposited at pay booths were not refunded.

2. Appellant's prayer for relief requested an order providing the following:
 a. Certification of this civil action as a class action.
 b. Directing and requiring Defendant to cease and desist from its practice of using a telephone answering device to answer incoming telephone calls to its office when the office is closed, whereby Defendant, by the use of its telephone answering device, is unable to answer the individual inquiries of the callers but by which scheme Defendant has been able to charge its callers tolls.
 c. Directing and requiring Defendant to cease and desist from its practice of coercing from subscribers whose telephone service has been suspended sums of money not due and owing to Defendant prior to restoration of said service.

██ "It is well-settled law that initial jurisdiction over matters involving the reasonableness, adequacy or sufficiency of a public utility's service, facilities or rates is vested in the PUC and not in the courts." *DeFrancesco v. Western Pennsylvania Water Co.*, 291 Pa.Super. 152, 156, 435 A.2d 614, 616 (1981), *vacated and remanded on other grounds*, 499 Pa. 374, 453 A.2d 595 (1982). See also: *Bell Telephone Co. v. Uni-Lite, Inc.*, 294 Pa.Super. 89, 91, 439 A.2d 763, 765 (1982); *Allport Water Authority v. Winburne Water Co.*, 258 Pa.Super. 555, 559, 393 A.2d 673, 675 (1978); *Byer v. Peoples Natural Gas Co.*, 251 Pa.Super. 75, 80, 380 A.2d 383, 386 (1977); *Bell Telephone Co. v. Sanner*, 248 Pa.Super. 273, 276–277, 375 A.2d 93, 95 (1977). "Matters relating to the tariff, the necessity of equipment, deposits and the use of various types of services are peculiarly within the expertise of the Public Utility Commission and, as such, are outside the original jurisdiction of the courts." *Bell Telephone Co. v. Uni-Lite, Inc., supra*, 294 Pa.Super. at 92, 439 A.2d at 765. "When a utility's failure to maintain reasonable and adequate service is alleged, regardless of the form of the pleading in which the allegations are couched, it is for the PUC initially to determine whether the service provided by the utility has fallen short of the statutory standard required of it." *DiSanto v. Dauphin Consolidated Water Supply Co.*, 291 Pa.Super. 440, 445, 436 A.2d 197, 199 (1981), quoting *Bell Telephone Co. v. Sanner, supra* 248 Pa.Super. at 277, 375 A.2d at 95. See generally: Public Utility Code, 66 Pa.C.S. § 101 et seq. It is equally clear that "[t]he courts retain jurisdiction of a

d. Directing and requiring Defendant to cease and desist in the future its practice of requiring subscribers for telephone service, which service has been suspended, to place on deposit sums of money not owing Defendant before restoring service.

e. Award damages to each prospective class member and to each member of each other proposed sub classes.

f. Award general damages.

g. Enter an order finding the Tariff as amended, filed by Defendant with the Pennsylvania Public Utility Commission, to be illegal, contrary to the Constitution of the Commonwealth of Pennsylvania, and contrary to law.

h. Such other and further relief as may be fair and proper under the circumstances.

suit for damages based on negligence or breach of contract wherein a utility's performance of its legally imposed and contractually adopted obligations are examined and applied to a given set of facts." *Litman v. Peoples Natural Gas Co.,* 303 Pa.Super. 345, 351, 449 A.2d 720, 723 (1982), quoting *Behrend v. Bell Telephone Co.,* 242 Pa.Super. 47, 59, 363 A.2d 1152, 1158 (1976), *vacated and remanded on other grounds,* 473 Pa. 320, 374 A.2d 536 (1977). "[O]nly where the available administrative remedies are adequate with respect to the alleged injury sustained and the relief requested" should exhaustion of administrative remedies be required before seeking damages in court. *Feingold v. Bell of Pennsylvania,* 477 Pa. 1, 10, 383 A.2d 791, 795–796 (1977).

 Appellant's equity action was a challenge to appellee's rates and to its service practices.[3] Rates and practices regarding deposits are peculiarly and exclusively within the

3. The Public Utility Code, 66 Pa.C.S. § 102, defines rates and services very broadly:

 "Rate." Every individual, or joint fare, toll, charge, rental, or other compensation whatsoever of any public utility, or contract carrier by motor vehicle, made, demanded, or received for any service within this part, offered, rendered, or furnished by such public utility, or contract carrier by motor vehicle, whether in currency, legal tender, or evidence thereof, in kind, in services or in any other medium or manner whatsoever, and whether received directly or indirectly, and any rules, regulations, practices, classifications or contracts affecting any such compensation, charge, fare, toll, or rental.

 "Service." Used in its broadest and most inclusive sense, includes any and all acts done, rendered, or performed, and any and all things furnished or supplied, and any and all facilities used, furnished, or supplied by public utilities, or contract carriers by motor vehicle, in the performance of their duties under this part to their patrons, employees, other public utilities, and the public, as well as the interchange of facilities between two or more of them, but shall not include any acts done, rendered or performed, or any thing furnished or supplied, or any facility used, furnished or supplied by public utilities or contract carriers by motor vehicle in the transportation of voting machines to and from polling places for or on behalf of any political subdivision of this Commonwealth for use in any primary, general or special election, or in the transportation of any injured, ill or dead person, or in the transportation by towing of wrecked or disabled motor vehicles, or in the transportation of pulpwood or chemical wood from woodlots.

jurisdiction and expertise of the Public Utility Commission. Therefore, they must be addressed by that body. Although appellant's complaint contains averments of breach of contract, these averments are but a cover disguising the real thrust of his complaint, which is to challenge the adequacy and propriety of Bell's rates and service practices. See and compare: *Byer v. Peoples Natural Gas Co., supra* 251 Pa.Super. at 81, 380 A.2d at 386.

If Bell engaged in any illegal practices, the Public Utility Commission has the power and authority to order such practices terminated and discontinued. 66 Pa.C.S. § 501. The Public Utility Commission also has the authority to order Bell to make refunds of excessive charges, if any, which may have been levied against Bell's customers. 66 Pa.C.S. § 1312. Because the administrative remedies are adequate to remedy any wrong which appellant may have sustained, "the case is exclusively within the PUC's jurisdiction and no recourse to the courts, outside of the normal appellate process, is warranted." *DiSanto v. Dauphin Consolidated Water Supply Co., supra* 291 Pa.Super. at 451, 436 A.2d at 202.

We are sympathetic with the difficult task faced by the trial judge when he was required to analyze the chaotic state of appellant's pleadings in the second action. In his complaint, appellant stated causes of action in the same count in which he alleged that Bell had improperly diverted telephone calls placed to his business telephone and had improperly suspended his residential telephone service for non-payment of bills. He also attempted to incorporate by reference a cause of action stated in a complaint which he had filed in a separate action. Subsequently, he filed an "amendment" to his complaint by which he attempted to add a fourth cause of action. In this manner, appellant attempted to include three separate complaints, containing at least four causes of action, in one and the same action. As counsel for appellee has observed, it was difficult to sort out the causes of action and issues which appellant wished to litigate.

In response to Bell's preliminary objections, the trial court initially entered an order which placed appellant's action in abeyance until the issues which the court was able to discern from the pleadings had been submitted to and decided by the Pennsylvania Public Utility Commission. Subsequently, the court amended its order and dismissed those claims relating to appellee's "demanding the payment of bills, suspending service for failure to pay bills and requiring the making of a deposit of monies" because they were within the exclusive jurisdiction of the Public Utility Commission. Our review of appellant's pleadings, conducted with the same difficulty experienced by the trial court, persuades us that the order must be reversed.

Appellant's initial complaint contained averments of a dispute between the parties regarding monies due for Morrow's residential telephone service and Bell's alleged diversion of telephone calls by telling Morrow's business callers that his assigned telephone number was not in service. In a prior complaint, which appellant attempted to incorporate by reference in this action, appellant had demanded compensatory and punitive damages because of Bell's alleged failure to list appellant's telephone number in the directory published by appellee. Finally, in an amendment to his complaint, appellant claimed additional compensatory and punitive damages for mental anguish caused by appellee's threat to disconnect appellant's telephone service because of a debt which Bell sought to collect but which appellant said he did not owe.

■ Appellant's averments stated at least three, possibly four, causes of action.[4] An order dismissing one or more of these separate causes of action, therefore, was appealable. *Praisner v. Stocker*, 313 Pa.Super. 332, 459 A.2d 1255 (1983).

■ These causes of action, it seems clear, have been asserted to recover damages for Bell's alleged breaches of

4. We express no opinion as to whether the separate causes of action have properly been joined in the same proceeding.

legal or contractual duties owed to appellant. An action for such damages belongs in the courts. *Nagy v. Bell Telephone Co.,* 292 Pa.Super. 24, 29, 436 A.2d 701, 704 (1981). The issues inherent in these alleged causes of action are not peculiarly within the area of expertise of the Public Utility Commission. They can be decided as readily, and perhaps more appropriately, by a court or jury. Thus, there was no need for the court to abdicate its jurisdiction in favor of the Public Utility Commission. Moreover, in this case it is unnecessary and would be wasteful to adopt a bifurcated procedure. See: *DeFrancesco v. Western Pennsylvania Water Co., supra* 291 Pa.Super. at 378, 453 A.2d at 597; *Elkin v. Bell Telephone Co.,* 491 Pa. 123, 134–135, 420 A.2d 371, 377 (1980).

The order of the trial court entered at Civil Action GD 82–00283 is affirmed. The order entered at Civil Action GD 82–00284 is reversed, and the action is remanded for further proceedings. Jurisdiction is not retained.