**Painter v. Aqua Pennsylvania, Inc.**

C.P. of Lawrence County, no. 10462 of 2010, C.A.

*Stephen J. DelSole, Patrick K. Cavanaugh, Matthew T.*

*Logue,* and *William S. Stickman IV,* for plaintiff.

*Coleen M. Meehan, Anthony C. DeCusatis, Adina D. Bingham,* and *Elizabeth Stroyd Windsor,* for defendant.

MOTTO, *P.J.,* December 13, 2010—Before the court for disposition are the defendant's preliminary objections to the first amended complaint seeking dismissal on jurisdictional grounds. Defendant contends that the amended complaint challenges the rates charged by the defendant and the defendant's billing practices; therefore, the court of common pleas has no jurisdiction over this dispute because the general assembly has delegated to the Pennsylvania Public Utility Commission ("PUC") exclusive authority to regulate the rates, terms and conditions of public utility service in the Commonwealth. The court finds that the PUC has initial and primary jurisdiction over the subject matter of this complaint; towit, the rates charged by the defendant and the defendant's billing practices, but that the jurisdiction of the PUC is not exclusive beyond these matters and the remedies allowed by the Public Utility Code. Therefore, for the reasons set forth below, the preliminary objections will be sustained to the extent that this proceeding shall be stayed pending the transfer of this case to the PUC, with this court to thereafter proceed on the claims not resolved by the PUC after its eventual rulings issues relating to rates and billing practices.

The plaintiffs' putative class action amended complaint alleges that the defendant Aqua Pennsylvania, Inc. ("Aqua") billed rate increases for the Distribution System Improvement Charge ("DSIC") prior to the effective date set by the PUC. Plaintiffs allege that each

and every time that defendant was authorized to increase the DSIC, it retroactively billed its customers the increased rate for the period of their billing cycle preceding the effective date of increase. As a result, defendant charged its customers amounts that were not owed, since the billing cycle began prior to the effective date of the increase. The amended complaint alleges causes of action consisting of alleged violation of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), conversion, and breach of contract. In addition to compensatory damages, the amended complaint seeks punitive damages and the statutory damages authorized by the UTPCPL. Defendant contends that the substance of the plaintiffs' amended complaint is the rate being charged by defendant; that the heart of each count of the amended complaint, regardless of how the cause of action is stated, is a challenge to defendant's billing practices and, therefore, to its rates. Accordingly, defendant argues that exclusive jurisdiction of the subject matter of the complaint rests with the PUC pursuant to the Public Utility Code, 66 Pa.C.S.A. §1301 et seq. Defendant cites a number of sections in the public utility code, which set forth specific limitations upon the rates that can be charged by public utilities and procedures seeking redress before the public utility commission on a claim that a public utility has charged an unauthorized rate.

Plaintiffs contend that they do not challenge the validity or reasonableness of the rates approved by the PUC, the tariff governing those rates, the authority of the PUC to approve and regulate the tariff or any other issue related to the rates, terms or conditions of public utility services provided by defendant; but rather, recognize the PUC's

exclusive authority to determine such matters. Plaintiffs argue that their claims raise only statutory and common law claims sounding in tort and contract arising from deceptive practices of defendant in taking money from its customers under false pretenses in violation of their respective contracts. Plaintiffs note that a key component of their claim is that the defendant used deceptive practices to enrich itself in violation of the UTPCPL and the terms of its contract with its customers by charging a rate to its customers prior to the time that it was authorized by the tariff. Plaintiffs argue that in making these claims, they take for granted that the PUC validly approved the tariff which set forth the dates that the DSIC was permitted to be raised.

In determining preliminary objections, the court must consider as true all well-pleaded material facts and all reasonable inferences that may be drawn from those facts. *Sheffield v. Department of Corrections*, 894 A.2d 836 (Pa. Cmwlth. 2006). Preliminary objections will be sustained only where defendant's right to relief is clear and free from doubt. *Id. McGriff v. Pennsylvania Board of Probation and Parole*, 809 A.2d 455 (Pa. Cmwlth. 2002). Where preliminary objections raise a question of subject matter jurisdiction, the function of the court is to determine whether recovery will be barred due to a lack of subject matter jurisdiction. *Kimmel Township Taxpayers Association v. Claysburg Kimmel School District*, 604 A.2d 1149, 1152 (Pa. Cmwlth. 1992).

It is well established that:

The courts will not originally adjudicate matters within the jurisdiction of the PUC. Initial jurisdiction in matters

concerning the relationship between public utilities and the public is in the PUC-not the Courts. *Borough of Lansdale v. Philadelphia Electric Company,* 403 Pa. 647, 650, 170 A.2d 565, 567 (1961) quoted in *Allport Water Authority et al. v. Winburne Water Co.*, 393 A.2d 673, 674 (Pa. Super. 1978).

In *Morrow v. Bell Telephone Company of Pennsylvania,* 479 A.2d 548 (Pa. Super. 1984), the plaintiff brought an action in equity seeking class action certifica-tion and challenging, the defendant telephone company's rates and service practices. The court found that the action, which was couched in terms of equity, was actually a challenge to the rates and services, therefore, jurisdiction was vested in the PUC. *Id.* 479 A.2d at 551. The *Morrow* court held that although the complaint contained averments of breach of contract, the averments were but a cover disguising the real thrust of the complaint.

In *County of Erie v. Verizon North, Inc.*, 879 A.2d 357 (Pa. Cmwlth. 2005), the county had filed its complaint against the defendant service provider contending that the defendant did not fulfill its financial responsibilities regarding the county's 911 emergency communication system. Defendant filed preliminary objections contending that the PUC had primary jurisdiction over the subject matter of the complaint. The complaint included claims for accounting, injunctive relief, breach of fiduciary duty, unjust enrichment and conversion. In determining that the PUC had primary jurisdiction, the court stated that in determining whether the doctrine of primary jurisdiction applies, courts must look beyond the form of the action to the essence of the underlying claims. The court went on

to agree with defendant verizon that the factual issue upon which the claim was based was whether verizon correctly billed, collected and remitted the 911 contribution rate, a matter which related to the tariff. The court quoted *Morrow*, which stated:

Matters relating to the tariff...are peculiarly within the expertise of the PUC and, as such, are outside the original jurisdiction of the courts. *Morrow*, 479 A.2d at 550 (quoting *Bell Telephone Co. v. Uni-Lite, Inc.*, 294 Pa.Super. 89, 439 A.2d 763, 765 (1982)).

As set forth in *County of Erie*, the Public Utility Code defines the term "tariff" as:

All schedules of rates, all rules, regulations, practices, or contracts involving any rate or rates, including contracts for interchange of service, and, in the case of the common carrier, schedules showing the method of distribution of the facilities of such common carrier. 66 Pa.C.S. §102.

Further, the code defines "rate" as follows:

Every individual, or joint fare, toll, charge, rental or other compensation whatsoever of any public utility, or contract carrier by motor vehicle, made, demanded or received for any service within this part, offered, rendered, or furnished by such public utility, or contract carrier by motor vehicle, whether in currency, legal tender or evidence thereof, in kind, in services or in any other medium or manner whatsoever, and whether received directly or indirectly, and any rules, regulations, *practices*, classifications, contracts affecting such compensation, charge, fare, toll or rental. 66 Pa.C.S.

§102 (emphasis supplied).

The doctrine of primary jurisdiction should be invoked to require a court to refrain from hearing a case where protection of the integrity of the regulatory scheme dictates that the parties preliminarily resort to the agency that administers the scheme for the resolution of disputes. *Weston v. Reading Co.*, 445 Pa. 182, 282 A.2d 714 (1971). In *Elkin v. Bell Telephone Co.*, 491 Pa. 123, 420 A.2d 371 (1980), the Supreme Court in discussing the doctrine stated that one of its purposes is to make use of the agency's special experience and expertise in complex areas and to promote consistency and uniformity in the area of administrative policy. *Id.* 491 Pa. at 132-33, 420 A.2d at 376. *Elkin* further noted that the doctrine of primary jurisdiction is principally applied to controversies involving "regulated industries." *Id.* at 133, 420 A.2d at 376. Where the court in which original jurisdiction was invoked determines that agency has primary jurisdiction, the trial court has the authority to transfer the matter to the appropriate administrative agency. *Id.*

Here, the allegations of the amended complaint involve a challenge to the billing practices of the defendant. The allegations are that defendant billed its customers a rate for a period of time before that rate became effective. Therefore, it necessarily follows that for the period of time from the beginning of the billing cycle until the effective date of the allowed rate, plaintiffs are contending that the defendant charged plaintiffs an unauthorized rate. Stated another way, the essence of the amended complaint is that for a period, defendant charged and collected an illegal rate not authorized by any tariff of the PUC. The court

concludes that the PUC has exclusive jurisdiction over rates that can be charged by a public utility and the billing practices relative to those rates, and thus has primary jurisdiction over the subject matter of this case.

Section 1303 of the Public Utility Code (66 Pa.C.S.A. §1303) provides that "No public utility...demand or receive from any person...a greater or lesser rate for any service rendered or to be rendered by any such public utility then that specified in the tariffs of such public utility applicable thereto." Section 1312 of the Public Utility Code (66 Pa.C.S.A. §1312) provides for a refund where a public utility has received a rate in excess of the applicable rate contained in an existing and effective tariff, giving the PUC the power and authority to make an order requiring the public utility to refund the amount of any excess paid by any patron together with interest at the legal rate from the date of such excessive payment. Thus, plaintiffs have the right to institute and seek a refund action before the PUC pursuant to §1312 for the rate charged that plaintiffs deem was in violation of the tariff. Although plaintiffs have couched their claims as being in violation of the UTPCPL, breach of contract and conversion, in each alleged cause of action the heart of the claim is based on the allegation that plaintiffs were charged rates at the beginning of a billing cycle and for a period of time prior to the effective date from which the date was authorized, and thus were charged an illegal rate. This is precisely the type of claim that is best suited to the expertise of the PUC.

Once the court determines that the PUC has primary jurisdiction, the court must next determine whether the jurisdiction of the PUC is exclusive, thus requiring the

dismissal of the proceeding before the court, or, whether the jurisdiction of the PUC is not exclusive, in which case the court may proceed with an action for damages based on the determination of the PUC of the matters within its realm of expertise.

The standard to be applied in determining whether the PUC's jurisdiction is exclusive is set forth in *DiSanto v. Daufin Consolidated Water Supply Company*, 436 A.2d 197, 202 (Pa. Super. 1981) as follows:

Having determined that the instant case involves matters within the normal sphere of the PUC, we must now decide whether the PUC's jurisdiction is exclusive or whether the bifurcated procedure adopted by the *Elkin* court should be followed in the instant case. Such a determination, however, is dependent upon the adequacy of the administrative remedies available to the appellee through the PUC. If the available administrative remedies are complete and adequate to make the complainant whole, then the PUC has exclusive jurisdiction over the controversy and there is no recourse to the courts outside of the normal channels of appeal and to the Commonwealth Court. However, where the administrative remedies are not adequate and complete, the PUC's jurisdiction is not exclusive and an action for damages may be brought in a court of common pleas based upon the PUC's initial determination of the matters within its realm of expertise.

In *Elkin v. Bell Telephone*, 491 Pa. 123, 420 A.2d 371 (1980), the Supreme Court approved a bifurcated procedure where the accommodation of the respective spheres of

the adjudicatory authority of the PUC and the courts of common pleas could be accomplished. The bifurcated procedure approved by *Elkin* provides for a civil suit for damages to be stayed pending a determination by the PUC of the matters that are within its exclusive jurisdiction. Judicial abstention protects the integrity of a regulatory scheme within the jurisdiction of the PUC, providing for a preliminary resort to the PUC. After a determination of the issues within the exclusive jurisdiction of the PUC, the pending action in the court of common pleas would not be used to re-litigate the questions determined by the PUC, but only to litigate the questions not resolved through administrative channels and to grant relief, if any, including damages that may be appropriate in light of the administrative determination. Once the administrative tribunal has determined the issues within its jurisdiction, then the temporarily suspended civil litigation may continue, guided in scope and direction by the nature and the outcome of the agency determination. *Elkin*, 491 Pa. at 133-314, 420 A.2d at 377, citing *Finegold v. Bell of Pennsylvania*, 477 Pa. 1, 8, 383 A.2d 791, 794 (1977).

The court here concludes that this court must retain jurisdiction subject to deferral of initial jurisdiction to the PUC because the PUC cannot fully address all of the claims for damages set forth in the amended complaint. In particular, plaintiffs raise claims under the UTPCPL which provides a statutory remedy which is not limited to the actual loss. The UTPCPL provides for statutory damages in the amount of the consumer's actual damages, or $100 per violation, whichever is greater, in addition to attorneys fees and costs. 73 Pa.C.S.A. §201-9.2(a). The statutory damages of $100 per violation are greater than the

amounts that plaintiffs could obtain on a refund awarded by the PUC. Plaintiffs also seek punitive damages, which are not available as a remedy before the PUC. If this court were to hold that the jurisdiction of the PUC is exclusive, then, by judicial decision, the court would be abrogating plaintiffs right to recover under the UTCPTL, even if plaintiffs are otherwise able to meet their burden of proof as to all of the elements of the claim brought pursuant to that statute. Also, plaintiffs would be denied the right to recover punitive damages, even if they were able to otherwise meet the burden of proof that would allow for the recovery of punitive damages. Such a result would be directly contrary to §103(c) of the Public Utility Code. As plaintiffs correctly note, this provision of the code states:

> *Remedies cumulative.* Except as otherwise provided in this part, nothing in this part shall abridge or alter the existing rights of action or remedies in equity or under the common or statutory law of this Commonwealth, and the provisions of this part shall be cumulative and in addition to such rights of action and remedies. 66 Pa.C.S.A. §103(c).

Therefore, a conclusion that the jurisdiction of the PUC is exclusive in this matter would run contrary to §103(c) of the Public Utility Code in that plaintiffs' rights of action and remedies available to them under the UTCPTL, and under common law actions for breach of contract and conversion, to the extent they allow for damages that go beyond a simple refund, would be abrogated. The court finds that such a conclusion would be contrary to the holdings of the Supreme Court in *Finegold* and *Elkin*, which must be followed.

For the reasons above stated, the court will enter an order which shall grant the defendant's preliminary objections to the extent that the court finds that the PUC has primary jurisdiction of this controversy and all proceedings herein shall be stayed pending the conclusion of proceedings before the Public Utility Commission. Jurisdiction of this case shall be transferred to the Public Utility Commission.

## ORDER OF COURT

And now, December 13, 2010, for the reasons set forth in the accompanying opinion of even date herewith, it is ordered and decreed that the defendant's preliminary objections are sustained in part. All proceedings in this matter are hereby stayed pending a resolution of plaintiffs' claims by the Pennsylvania Public Utility commission. Jurisdiction is deferred and the within case and matter is hereby transferred to the Pennsylvania Public Utility Commission for disposition. All remaining preliminary objections not relating to jurisdiction are overruled.