**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DAVID HATCHIGIAN | : | IN THE SUPERIOR COURT |
| | : | OF PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| PECO/EXELON AND MUNICIPAL | : | |
| INSPECTION CORPORATION, | : | |
| | : | |
| Appellees | : | No. 142 EDA 2018 |

Appeal from the Order Entered December 18, 2017
in the Court of Common Pleas of Philadelphia County
Civil Division at No(s): August 2016 No. 16080065

BEFORE: SHOGAN, J., NICHOLS, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:          **FILED AUGUST 06, 2019**

David Hatchigian appeals *pro se* from the order entered on December 18, 2017, which dismissed with prejudice the fourth amended complaint he filed against PECO Energy Company/Exelon[1] (PECO) and Municipal Inspection Corporation (MIC).[2]  Upon review, we vacate the order and remand for proceedings consistent with this memorandum.

---

[1] "PECO [] is a jurisdictional public utility providing electric and gas service in the Commonwealth of Pennsylvania." Preliminary Objections, 10/30/2017, at ¶ 24.  According to Hatchigian, PECO "is a subsidiary of the Exelon Corporation." Fourth Amended Complaint, 8/21/2017, at ¶ 22.

[2] According to Hatchigian, MIC "is a private third-party corporate entity, approved by PECO to perform electrical inspections and provider of [*sic*] certifications" and is located in Philadelphia. Fourth Amended Complaint, 8/21/2017, at ¶ 23.

* Retired Senior Judge assigned to the Superior Court.

This case arises from a dispute between Hatchigian and PECO. We summarize the facts as set forth by Hatchigian in his fourth amended complaint. Hatchigian lives in and owns rental property in the city of Philadelphia. He obtains his electricity from PECO. It is Hatchigian's position that PECO's "inadequate termination and reconnection procedures leave [him and others similarly situated] at the mercy of PECO when bargaining [for] their right to residential electricity."[3] Fourth Amended Complaint, 8/21/2017, at ¶ 18. Specifically, Hatchigian claimed that PECO "refused a reconnection pursuant to a certification requirement within the Electric Service Tariff filed

---

[3] Hatchigian initially filed this action on behalf of himself and commenced the action as a claim in the Philadelphia Municipal Court, where judgment was entered in favor of PECO. Hatchigian then appealed to the Court of Common Pleas, where Hatchigian began adding language in the nature of a class action. *See* Complaint, 12/1/2016, at ¶ 1 (stating that this action is on behalf of himself and "other customers, landlords, and tenants whose electrical utility services were terminated without warning, notice, or a hearing"). In his second amended complaint, Hatchigian added numerous named plaintiffs, including "John Does 1-20" and "all those similarly situated." Second Amended Complaint, 5/11/2017, at 1. He maintains the same language in his fourth amended complaint. *See* Fourth Amended Complaint, 8/21/2017, at 1. Confusing matters further, Hatchigian claims this class action is being pursued under the Federal Rules of Civil Procedure that govern class actions. *See* Fourth Amended Complaint, 8/21/2017, at ¶ 69 (citing Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3)). Class action lawsuits in Pennsylvania state courts are governed by Pa.R.C.P. 1701-1717. In any event, determining whether this case is or is not a class action is not necessary to our ultimate conclusion, and for ease of reference, we will refer to Hatchigian as the only plaintiff/appellant.

by PECO and on file with the Pennsylvania Public Utility Commission [(PUC)]."[4] *Id*. at ¶ 50.

According to Hatchigian, "[o]n or about May 18, 2016[,] Hatchigian received several phone calls from two different tenants complaining that all electric[al service] was shut off [in their apartments.]" *Id*. at ¶ 51. Hatchigian then contacted PECO, and claimed he was told that "electrical [service] had been disconnected inadvertently but was in the process of being restored that same day, with no need for Hatchigian to file for [] exemptions to reintroduce service." *Id*. at ¶ 52. Hatchigian contended that "service was not restored as promised" and PECO then "claimed that the apartment had been unoccupied for six months and therefore a certificate from their electrical underwriter firm was now required." *Id*. at ¶ 53. Hatchigian claimed that he "ordered underwriter certification by [MIC]" and "paid a total of $130 to MIC as a predicate for PECO's reintroduction of service." *Id*. at ¶ 54. Then, according to Hatchigian, PECO continued to refuse to reconnect electrical service until

---

[4] The PUC is a statutory entity created and governed by the Public Utility Code. *See* 66 Pa.C.S. §§ 101-3316. Additionally,

> A tariff is a set of operating rules imposed by the State that a public utility must follow if it wishes to provide services to customers. *It is a public document which sets forth the schedule of rates and services and rules, regulations and practices regarding those services.*

*Sunrise Energy, LLC v. FirstEnergy Corp.*, 148 A.3d 894, 905 n.14 (Pa. Cmwlth. 2016) (quoting *PPL Electric Utilities Corp. v. Pennsylvania Public Utility Commission*, 912 A.2d 386, 402 (Pa. Cmwlth. 2006) (emphasis added)).

Hatchigian arranged for a "re-inspection of all of the electric wiring at the []
apartment." *Id*. at ¶ 57. Hatchigian contended he complied with all
instructions, but due to the service interruption, he was then in violation of
various Philadelphia municipal codes. Hatchigian averred that due to the units
not having electrical service, despite having made all necessary payments to
PECO, "new tenants were ultimately unable to move into the apartment on
time." *Id*. at ¶ 59. Hatchigian contended that

> [b]y terminating [his] electrical service without warning despite
> payment for service, [PECO was] negligent, breached the services
> contract and an implied covenant of good faith and fair dealing
> therein, violated [his] rights under and tortiously interfered with
> [his] leases, violated the UTPCPL,[5] deprived [him] of [his]
> property rights via an unconstitutional taking[,] and created a
> public nuisance.

*Id*. at ¶ 64. Hatchigian requested several forms of relief including $100,000
from PECO. *Id*. at ¶ 131.

PECO filed preliminary objections to Hatchigian's fourth amended
complaint. It is PECO's position that Hatchigian's "underlying cause of action
is the contention that [PECO's] processes and procedures are insufficient and,
by design, these policies and procedures cause damage to utility customers."
Preliminary Objections, 10/30/2017, at ¶ 23. According to PECO, it is the PUC
that regulates the policies and procedures about which Hatchigian complains.

---

[5] The UTPCPL is the Unfair Trade Practices and Consumer Protection Law. **See**
73 P.S. §§ 201-1 through 201-9.3. The purpose of the UTPCPL "is to protect
the public from—and indeed to eradicate—unfair or deceptive business
practices." **Agliori v. Metro. Life Ins. Co.**, 879 A.2d 315, 318 (Pa. Super.
2005) (internal quotation marks omitted).

Thus, according to PECO, the PUC was "the appropriate forum for the adjudication of issues involving the reasonableness, adequacy and sufficiency of public utility services." *Id*. at ¶ 33. Therefore, PECO claimed that the PUC has "primary and exclusive jurisdiction" over Hatchigian's claims. *Id*. at ¶ 36.

On December 15, 2017, the trial court sustained PECO's preliminary objections in part, concluding it lacked subject matter jurisdiction over this matter. Specifically, the trial court concluded that Hatchigian's complaint "challenges the service termination procedure employed by PECO." Trial Court Opinion, 8/27/2018, at 4. Although some of Hatchigian's causes of action sound in tort and contract, "[t]he overall thrust of the [c]omplaint … challenges [PECO's] termination procedures." *Id*. at 5. Accordingly, the trial court concluded that "the redress [Hatchigian] seeks is exclusively within the PUC's jurisdiction." *Id*. at 6. Therefore, the trial court sustained PECO's preliminary objections on this basis and dismissed Hatchigian's complaint.

Hatchigian timely filed a notice of appeal. The trial court did not order Hatchigian to file a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925, but the trial court filed an opinion explaining its rationale for dismissing the complaint. On appeal, Hatchigian first claims the trial court erred in sustaining PECO's preliminary objections and dismissing the fourth amended complaint for lack of subject matter jurisdiction. Hatchigian's Brief at 14-52. We review this claim mindful of the following.

> On an appeal from an [o]rder sustaining preliminary objections, we accept as true all well-pleaded material facts set

- 5 -

forth in the appellant's complaint and all reasonable inferences which may be drawn from those facts. Where, as here, upholding sustained preliminary objections would result in the dismissal of an action, we may do so only in cases that are clear and free from doubt. Any doubt should be resolved by a refusal to sustain the objections.

[I]t is well-settled that the question of subject matter jurisdiction may be raised at any time, by any party, or by the court *sua sponte*. Our standard of review is *de novo*, and our scope of review is plenary. Generally, subject matter jurisdiction has been defined as the court's power to hear cases of the class to which the case at issue belongs.

Jurisdiction is the capacity to pronounce a judgment of the law on an issue brought before the court through due process of law. It is the right to adjudicate concerning the subject matter in a given case.... Without such jurisdiction, there is no authority to give judgment and one so entered is without force or effect. The trial court has jurisdiction if it is competent to hear or determine controversies of the general nature of the matter involved *sub judice*. Jurisdiction lies if the court had power to enter upon the inquiry, not whether it might ultimately decide that it could not give relief in the particular case.

***Estate of Gentry v. Diamond Rock Hill Realty, LLC***, 111 A.3d 194, 198 (Pa. Super. 2015) (internal citations and quotation marks omitted).

We begin with analyzing the trial court's conclusion that the PUC has primary jurisdiction over the matters set forth in Hatchigian's fourth amended complaint.

It is well-settled law that initial jurisdiction over matters involving the reasonableness, adequacy or sufficiency of a public utility's service, facilities or rates is vested in the PUC and not in the courts. Matters relating to the tariff, the necessity of equipment, deposits and the use of various types of services are peculiarly within the expertise of the [PUC] and, as such, are outside the original jurisdiction of the courts. When a utility's failure to maintain reasonable and adequate service is alleged, regardless of the form of the pleading in which the allegations are

- 6 -

couched, it is for the PUC initially to determine whether the service provided by the utility has fallen short of the statutory standard required of it. It is equally clear that [t]he courts retain jurisdiction of a suit for damages based on negligence or breach of contract wherein a utility's performance of its legally imposed and contractually adopted obligations are examined and applied to a given set of facts. [O]nly where the available administrative remedies are adequate with respect to the alleged injury sustained and the relief requested should exhaustion of administrative remedies be required before seeking damages in court.

*Morrow v. Bell Tel. Co. of Pa.*, 479 A.2d 548, 554-55 (Pa. Super. 1984) (internal citations and quotation marks omitted).

Hatchigian contends that the matters set forth in the fourth amended complaint "are almost entirely questions of law and statutory construction which the [trial] court is well versed in adjudicating." Hatchigian's Brief at 18. Hatchigian further argues that even if the PUC has subject matter jurisdiction over some of the claims set forth, the trial court should have stayed the court proceeding, rather than dismissing it in its entirety. *Id*. at 21.

The Commonwealth Court considered similar issues in *Pettko v. Pa. Am. Water Co. (PAWC)*, 39 A.3d 473 (Pa. Cmwlth. 2012).[6] In that case, Pettko, on behalf of himself and others similarly situated, filed a complaint in

---

[6] We recognize that cases decided by the Commonwealth Court are not binding precedent on this Court. *See Kraus v. Taylor*, 710 A.2d 1142, 1144 (Pa. Super. 1998) ("Although we frequently turn to the wisdom of our colleagues on the Commonwealth Court for guidance, the decisions of that court are not binding on this Court."). *Pettko* was initially appealed to this Court, but this Court transferred it to the Commonwealth Court. In its opinion, the Commonwealth Court stated that there was "no basis" for it to assume jurisdiction over the appeal, but since no party objected to the transfer, it decided the case. *Pettko*, 39 A.3d at 476 n.2. Moreover, in its analysis, it relied upon Pennsylvania Supreme Court and Superior Court cases.

the Court of Common Pleas of Washington County against PAWC challenging its "billing practices, including practices relating to certain rate increases approved by the PUC, and PAWC's alleged practice of rounding up, rather than down, amounts for various components of its bills." *Id*. at 475-76. Notably, Pettko set forth claims for breach of contract, conversion, and violations of the UTPCPL.

PAWC filed preliminary objections averring, *inter alia*, that the PUC "has primary and exclusive jurisdiction over Pettko's complaint." *Id*. at 477. The trial court agreed, "dismissed Pettko's complaint, and transferred the matter to the PUC." *Id*. Pettko appealed.

On appeal, the Commonwealth Court analyzed first whether the PUC has primary jurisdiction. In doing so, it set forth the following.

> When a trial court calls upon an administrative agency to exercise its primary jurisdiction and evaluate a particular pertinent issue, and the agency renders a determination, that adjudicatory action has a binding, collateral effect upon the trial court's proceedings, unless a party successfully challenges the determination through the appeal process. Such determinations by administrative agencies, therefore, serve more than a merely advisory function. As we stated in *County of Erie v. Verizon North, Inc.*, 879 A.2d 357 (Pa. Cmwlth. 2005), under the doctrine of primary jurisdiction, a trial court may "refrain from hearing a case" over which it might otherwise have jurisdiction, "where protection of the integrity of [a] regulatory scheme dictates that the parties preliminarily resort to the agency that administers the scheme for the resolution of disputes." *County of Erie*, 879 A.2d at 363. "Once the administrative tribunal has determined the issues within its jurisdiction, then the temporarily suspended civil litigation may continue, guided in scope and direction by the nature and outcome of the agency determination." *Elkin*[ *v. Bell Telephone Co. of Pa.*, 420 A.2d 371, 377 (Pa. 1980)].

Our Supreme Court, however, admonished trial courts not to abdicate judicial responsibility, and summarized the circumstances in which the primary jurisdiction doctrine applies, as follows:

[W]here the subject matter is within an agency's jurisdiction and where it is a complex matter requiring special competence, with which the judge or jury would not or could not be familiar, the proper procedure is for the court to refer the matter to the appropriate agency. Also weighing in the consideration should be the need for uniformity and consistency in agency policy and the legislative intent. Where, on the other hand, the matter is not one peculiarly within the agency's area of expertise, but is one which the courts or jury are equally well-suited to determine, the court must not abdicate its responsibility. In such cases, it would be wasteful to employ the bifurcated procedure of referral, as no appreciable benefits would be forthcoming.

*Id*. (footnote omitted).

Additionally, in ***County of Erie*** this Court confirmed the notion that the nature of the claims a plaintiff brings is not necessarily determinative of the question of whether the doctrine of primary jurisdiction applies. In ***County of Erie***, we quoted the Superior Court's decision in ***Morrow***, [***supra***], as follows: "[W]hen a utility's failure to maintain reasonable and adequate service is alleged, regardless of the form of the pleading in which the allegations are couched, it is for the PUC, initially, to determine whether the service provided by the utility has fallen short of the statutory standard required of it." ***County of Erie***, 879 A.2d at 364 (quoting ***Morrow***, 479 A.2d at 550-51).

***Pettko***, 39 A.3d at 479-80 (some citations omitted).

On appeal, Pettko claimed that his "UTPCPL and common law claims do not implicate any regulatory matters within the PUC's subject matter competency." *Id*. at 480. He argued that PAWC's conduct was deceptive, and

- 9 -

adjudicating such a claim does "not require the exercise of the PUC's expertise." *Id*. PAWC countered that Pettko's claims regarding PUC's "power to regulate the rates a utility charges to a customer and the power to prescribe regulations and practices with which utilities must comply" implicates the primary jurisdiction of the PUC. *Id*. at 481. In addition, both Pettko and PAWC referenced provisions of the tariff in making their arguments.

The Commonwealth Court analyzed the arguments presented and concluded

> that the question of whether a utility's manner of billing is in compliance with a tariff is encompassed in the claims relating to billing practices that Pettko has raised in his complaint…. If the PUC reviews the tariff and PAWC's billing methodology and concludes that the billing practices are compliant with the tariff, the civil matter will be concluded, subject of course to appellate review of the PUC's decision.

*Id.* at 482-83.

Thus, the Commonwealth Court determined that the PUC had primary jurisdiction over the claim. The Commonwealth Court then went on to analyze whether the PUC also had exclusive jurisdiction over the claim. "[U]nder the doctrine of exhaustion of administrative remedies, an administrative agency does not have exclusive jurisdiction unless it has the power to award relief that will make a successful litigant whole." *Id*. at 484. The Commonwealth Court concluded that although relief on some of Pettko's claims could be provided by the PUC, it also concluded that relief on Pettko's UTPCPL claim could not be granted by the PUC. The Commonwealth Court stated that, *inter*

*alia*, the Public Utility Code "does not authorize the PUC to remedy fraudulent conduct (unlike the UTPCPL)." ***Id***. at 485. Thus, although the PUC had primary jurisdiction over some of the claims set forth by Pettko, it did not have exclusive jurisdiction over the UTPCPL claim "because the PUC has no power to award relief, if it is appropriate, for that claim." ***Id***. Accordingly, the Commonwealth Court affirmed the trial court's order, concluding that the trial court acted appropriately by transferring the matter to the PUC.

Applying this framework, we now turn to the case *sub judice*. As set forth by the trial court, Hatchigian's primary complaint is that PECO either failed to apply the provisions of its tariff to him and others similarly situated or that the provisions of the tariff itself were unreasonable. ***See*** Fourth Amended Complaint, ¶¶ 24-33 (alleging that "[s]ection 9.2 of PECO's tariff" "gives inadequate notice" to customers; and that "PECO's interpretation of this tariff includes an unreasonable certification requirement"); *id*. at ¶ 39 (alleging that "PECO's exclusive reliance on computerized systems to execute its broadly[-]worded tariff makes the risk of erroneous deprivation [of electrical service] substantial"); *id*. at ¶ 41 (alleging that "PECO is able to collect customer funds pursuant to its tariff with impunity as if it were a public agency, without any of the constraints in the [P]ublic [U]tility [C]ode;" and *id*. at ¶ 46 (alleging that "PECO's one sided interpretation of the tariff disregards the need to access channels for customer complaint in a meaningful time and in a meaningful manner"). As the trial court concluded, it is these

provisions that form the basis of Hatchigian's complaint. *See* Trial Court Opinion, 8/27/2018, at 5 ("The overall thrust of the [c]omplaint … challenges [PECO's] termination procedures."). Hatchitgian's additional causes of action all hinge on whether PECO either misinterpreted its tariff, applied the tariff to Hatchigian unreasonably, or that the tariff itself is insufficient to provide due process to PECO's customers.

It is well-settled that determinations regarding the adequacy and application of a public utility tariff fall within the expertise of the PUC. *See Optimum Image, Inc. v. Philadelphia Elec. Co.*, 600 A.2d 553, 557 (Pa. Super. 1991) ("Matters relating to tariff … are within the particular expertise of the PUC."); *Morrow*, 479 A.2d at 550 (same). In his brief, Hatchigian acknowledges his complaint is two-fold: "(1) PECO and agents interfere[d] with lease arrangements entered into by the [l]andlord and [t]enant classes and (2) PECO fail[ed] its duty to maintain a reasonable standard of care when performing the disconnection and reconnection terms of the [s]ervice [a]greement." Hatchigian's Brief at 31.

Instantly, there can be no doubt that resolution of the standard-of-care issue will rely extensively upon whether the service agreement is in compliance with the tariff. Such a determination is within the particular expertise of the PUC. *See State Farm Fire & Cas. Co. v. PECO*, 54 A.3d 921, 927 (Pa. Super. 2012) (internal quotation marks omitted) (pointing out that it is the "PUC's authority to determine the reasonableness of tariffs" and

that the PUC has the "power to assess whether such provisions are compatible with the [Public Utility C]ode and policies of the commission and consistent with its regulatory scheme").  Moreover, to the extent that PECO is in compliance with the tariff, and the tariff is reasonable, PECO cannot be unreasonably interfering with a landlord-tenant relationship. Accordingly, we hold that the PUC has primary jurisdiction over Hatchigian's complaint.

We now turn to consider whether the PUC has exclusive jurisdiction.  As in **Pettko**, Hatchigian raises a claim that PECO has violated the UTPCPL. Accordingly, we hold that Hatchigian's UTPCPL claim does not fall within the exclusive jurisdiction of the PUC, and the trial court erred in dismissing Hatchigian's fourth amended complaint with prejudice. **See Pettko**, **supra**. In addition to the UTPCPL claim, Hatchigian also raises other claims, such as an unconstitutional taking and public nuisance.  To the extent that the PUC finds in favor of Hatchigian and provides Hatchigian relief on the claims over which it has jurisdiction, Appellant may then pursue his remaining claims in the Court of Common Pleas.

Based on the foregoing, we vacate the order of the trial court and remand for the entry of an order transferring the case to the PUC.

Order vacated.  Case remanded.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/6/19