**COUNTY OF ERIE, Pennsylvania, Appellant**

v.

**VERIZON NORTH, INC., formerly GTE North, Inc.**

Commonwealth Court of Pennsylvania.

Argued May 4, 2005.

Decided July 12, 2005.

David F. Dieteman, Erie, for appellant.

Norman James Kennard, Harrisburg, for appellee.

BEFORE: COLINS, President Judge, McGINLEY, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, COHN JUBELIRER, Judge, SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge COHN JUBELIRER.

The County of Erie (County) appeals from an order of the Court of Common Pleas of Erie County, which, after it concluded that primary jurisdiction over the matter lies with the Public Utility Commission (PUC), sustained Verizon North, Inc.'s (Verizon) jurisdictional preliminary objection and dismissed County's Complaint without prejudice. County's complaint alleged that Verizon did not fulfill its financial responsibilities regarding its 911 emergency communication system. The question now before us is whether, under the doctrine of primary jurisdiction, Coun-

ty's complaint should be adjudicated before the trial court or the PUC.

Pursuant to the Public Safety Emergency Telephone Act (911 Act),[1] County operates a 911 emergency communication system encompassing all of Erie County. The 911 Act, through the institution of a 911 fee, provides a funding mechanism for counties to recover costs associated with the establishment and operation of 911 calling systems. Verizon, as a local exchange telephone service provider, is obligated to bill and collect the County 911 fee.

Verizon's obligations to County arise under both the 911 Act and its implementing regulations, codified as the Public Safety Emergency Telephone Program.[2] Together, the 911 Act and its implementing regulations require Verizon to: 1) advise County of the total number of telephone access lines in service covered by the 911 system, for each exchange, 4 Pa.Code § 120b.105(8); 2) establish a billing system to account for the levying, collection and disbursement of the 911 fee, 4 Pa.Code § 120b.110(a); and, 3) bill and collect the 911 fee from the telephone subscribers,

and then remit to County "the entire contribution rate and accrued interest less the actual uncollectible and less the approved administrative fee on a quarterly basis." 4 Pa.Code § 120b.110(d); *see also* 35 P.S. § 7017(a).

County alleges that there are approximately 225,000 individual telephone subscribers in Erie County that are serviced by Verizon and responsible for payment of the 911 fee; however, Verizon reports collecting the 911 fee from approximately 137,000 telephone subscribers. Because of this discrepancy, County attempted to obtain information pertaining to the telephone numbers of those who subscribe to Verizon. County alleges that when Verizon would not comply with its requests for information, it filed a Complaint in the trial court alleging that Verizon failed to remit the statutorily defined contribution rate for County's 911 system. In its Complaint, County requests both legal and equitable relief, including an accounting, an injunction requiring Verizon to comply with its obligations, and payment of outstanding 911 fees.[3]

---

**1.** Act of July 9, 1990, P.L. 340, *as amended,* 35 P.S. § 7011–7021.1

**2.** 4 Pa.Code §§ 120b.101–120.113.

**3.** The Complaint pertinently states:

COUNT I—ACCOUNTING

[County is entitled to an accounting from Verizon with respect to Verizon's] "manner and method of identifying and calculating the number of telephone subscribers and local access lines, including defendant Verizon's criteria for identification of those telephone subscribers who are to be charged the County 911 Fee and the characterization and/or exemption of types and classes of local service and telephone subscribers."

COUNT II—INJUNCTION

"To the extent that defendant Verizon has failed to fulfill its obligations [under the 911 Act] with respect to plaintiff Erie County's

911 system, defendant Verizon should be ordered to comply with such obligations."

COUNT III—BREACH OF FIDUCIARY DUTY

"If it is determined that defendant Verizon has failed to [provide information, as well as bill, collect and remit to County the 911 contribution rate], then defendant Verizon is liable to plaintiff Erie County for breaching its fiduciary duty."

COUNT IV—UNJUST ENRICHMENT

"If it is determined that defendant Verizon has billed, collected and failed to remit any portion of the County 911 Fee to plaintiff Erie County, it would be unconscionable and unjust to allow defendant Verizon to retain the benefit of the County 911 Fee moneys."

COUNT V—CONVERSION

Verizon filed preliminary objections averring that the Complaint be dismissed for legal insufficiency, failure to plead material facts, and because primary jurisdiction of the matter was with the PUC and/or the Pennsylvania Emergency Management Agency (PEMA).[4] Following oral argument on the preliminary objections, the trial court entered an opinion and order sustaining County's jurisdictional preliminary objection pertaining to primary jurisdiction, and *dismissing* County's Complaint without prejudice.[5]

The trial court, after analyzing whether the PEMA and/or the PUC had jurisdiction, concluded that County had failed to exhaust its administrative remedies because it may seek assistance from PEMA, and because the PUC has primary jurisdiction over the subject matter. In so holding, the trial court examined case law analyzing the 911 Act and reasoned that the proper forum for the resolution of reimbursement and billing issues under that Act lay with the PUC.[6] Specifically, the trial court concluded that deference to the PUC would provide for "more uniform statewide legal and policy applications" of the 911 Act.[7] (Trial Ct. Op. at 10.) The trial court based its conclusion on the

"If it is determined that defendant Verizon has billed, collected and failed to remit any portion of the County 911 Fee to plaintiff Erie County, then defendant Verizon is liable to plaintiff Erie County for conversion." (Compl.¶¶ 37, 46, 51, 56, 61.)

4. PEMA is the agency charged with the power and authority to promulgate, adopt, publish and use guidelines for the implementation of the 911 Act. *See* 35 P.S. § 7013(a).

5. The trial court did not address the remaining two preliminary objections.

6. The trial court also found that PEMA has administrative and enforcement authority under the 911 Act. However, it concluded, after reviewing relevant case law and interpreting the 911 Act, that the issue of whether Verizon properly remitted the correct contribution rate to County would be best resolved by the PUC. (Trial Ct. Op. at 5.)

7. The following facts and dates are taken from the Opinion and Order of the PUC, dated April 1, 2005, No. C–20032036, which was attached to a letter dated April 28, 2005 submitted to the Court from counsel for Verizon.

The day after the trial court entered its order, County filed complaints with PEMA and the PUC, which were identical to the pleadings in the state court action. On December 12, 2003, PEMA issued a letter stating that it did not have jurisdiction over the subject matter because it believed that the PUC did; thus, it dismissed the action. On December 22, 2003, Verizon filed a Motion for a

More Specific Pleading with the PUC. On January 2, 2004, County filed an Answer and Objections to Verizon's Motion. On January 21, 2004, Verizon filed a Motion to Strike and Answer to County's Objections. Administrative Law Judge (ALJ) Gesoff found that the complaint filed by County was styled as a common law tort and equity action, which failed to invoke the jurisdiction of the PUC. Accordingly, on February 2, 2004, ALJ Gesoff issued the First Interim Order, which granted Verizon's Motion, and directed County to file an amended complaint by February 18, 2004, and Verizon to file an answer by March 9, 2004. By letter dated February 18, 2004, County opined that the PUC lacked jurisdiction over its complaint and that it would not be filing an amended complaint for that reason. A hearing was scheduled before ALJ Nene for June 7, 2004, which subsequently was rescheduled and then canceled. By Initial Decision issued September 27, 2004, ALJ Nene dismissed County's complaint for failure to prosecute. The parties filed Exceptions and Reply Exceptions thereto.

On April 1, 2005, the PUC entered an Order finding that it has jurisdiction to address the issue of whether Verizon properly billed the County's 911 fee and remitted the appropriate funds to County. The PUC denied County's Exceptions and ordered County to notify the PUC within ten days as to whether or not it wanted to proceed with its complaint. The Order instructed County that, if it so notified the PUC, the matter would be remanded for further proceedings. Such proceedings would determine whether or not Verizon properly counted and/or exempted telephone

**362**

PUC's handling of *City of Philadelphia v. Pennsylvania Pub. Util. Comm'n*, 702 A.2d 1139 (Pa.Cmwlth.1997), on remand. According to the trial court, the PUC on remand from the above cited case, found that it had jurisdiction based upon: 1) its power to review/approve contracts between public utilities and municipalities; 2) its power to regulate the terms and conditions of the provisions of public utility service to the extent required to safeguard public welfare; and 3) its authority, as a regulated and tarrifed communication service, to determine the terms and conditions for providing the public utility service for both the telephone service provider and customer. (Trial Ct. Op. at 6)(citing *Pet. of Bell Atlantic Pennsylvania, Inc.*, 2000 Pa. PUC LEXIS 29, *17–18 (May 17, 2000); 1998 Pa. PUC LEXIS 177, *29–30; 29 Pa. Bull. 1576, 1577). The trial court also found instructive *Morrow v. Bell Tel. Co. of Pennsylvania*, 330 Pa.Super. 276, 479 A.2d 548 (1984), because, there, the Superior Court affirmed a trial court's order dismissing an equity action that challenged a telephone company's rates and services, after finding that exclusive jurisdiction was vested in the PUC. Additionally, the trial court, in looking at the essence of the underlying claims, found that the PUC and PEMA are in a better position to review, investigate and adjudicate issues involving rates and service practices raised in the Complaint.

County filed its Notice of Appeal with the Pennsylvania Superior Court on December 19, 2003. Subsequent to the Notice, the trial court ordered County to file its concise statement of matters complained of on appeal, which it filed on January 5, 2004. On January 9, 2004, the trial court entered an opinion wherein it incorporated and affirmed its November 2003 order. Verizon filed a motion to quash the appeal as interlocutory on February 2, 2004. By order dated February 17, 2004, the Superior Court transferred the appeal to this Court. On April 15, 2004, this Court denied the motion to quash. We must now decide whether the trial court erred or abused its discretion in sustaining Verizon's jurisdictional preliminary objection and dismissing the Complaint without prejudice. *See Elkin v. Bell Tel. Co.*, 491 Pa. 123, 420 A.2d 371 (1980).

County argues that the PUC does not have primary jurisdiction[8] because none of its powers or duties under the 911 Act are implicated here. It asserts that the Complaint sets forth five counts, all of which are exclusively based on common law and equitable theories: (I) Accounting, (II) Injunctive Relief, (III) Breach of Fiduciary Duty, (IV) Unjust Enrichment, and (V) Conversion. County asserts that our Pennsylvania Supreme Court in *Feingold v. Bell of Pennsylvania*, 477 Pa. 1, 383 A.2d 791 (1977), recognized that the PUC's enforcement and remedial powers are not the same as powers of the court, because

subscribers and local access lines, and billed, collected, and/or remitted the Erie County 911 Fee, which Verizon is obligated to do pursuant to the Public Safety Emergency Telephone Act. On April 7, 2005, County informed the PUC that it wished to proceed with its complaint.

8. County argues in its brief to this Court that the trial court erred because it has *subject matter jurisdiction* over the Complaint. The Order issued by the trial court sustains the

Defendant's "preliminary objection for lack of primary jurisdiction." There is a distinction between primary jurisdiction and subject matter jurisdiction. The doctrine of primary jurisdiction does not operate to oust the subject matter jurisdiction of the court. *Ostrov v. I.F.T., Inc.*, 402 Pa.Super. 87, 586 A.2d 409 (1991). Hence, although a court may have subject matter jurisdiction over a complaint, under the doctrine of primary jurisdiction, the court *defers* its jurisdiction until an agency ruling has been made. *Id.* at 413.

the PUC is not empowered to award monetary damages. It maintains that its Complaint involves "garden variety" common law and equitable claims that do not require the specialized knowledge of the PUC. County also contends that Verizon's breach of fiduciary duties is irrelevant to the statutory scheme of the 911 Act. Therefore, it asserts that there is no need to apply the doctrine of primary jurisdiction.

 It is well established that the courts of common pleas have unlimited jurisdiction over all actions and proceedings, except as may otherwise be provided by law. 42 Pa.C.S. § 931. However, the courts may refrain from hearing a case under the doctrine of "primary jurisdiction" where protection of the integrity of the regulatory scheme dictates that the parties preliminarily resort to the agency that administers the scheme for the resolution of disputes. *Weston v. Reading Co.*, 445 Pa. 182, 282 A.2d 714 (1971). Thus, this doctrine recognizes that both courts and administrative agencies play a role in the adjudication of certain matters.[9] Our Supreme Court in *Elkin* thoroughly discussed this doctrine and stated that the purpose of the doctrine, among other things, is to make use of the agency's special experience and expertise in complex areas and promote consistency and uniformity in the area of administrative policy. *Id.*, 491 Pa. at 132–33, 420 A.2d at 376. These purposes are frequently effectuated in, and the doctrine is principally applicable to, controversies concerning "regulated industries." *Id.* at 133, 420 A.2d at 376. One caveat, however, is that courts should not develop a "dependency" on "agencies whenever a controversy remotely involves some issue falling arguably within the domain of the agency's 'expertise,'" because expertise is not a talisman dissolving a court's jurisdiction, nor should accommodation to the administrative function be an abdication of judicial responsibility. *Id.* at 134, 420 A.2d at 377.[10] The *Elkin* Court also noted the importance of recognizing that this doctrine is "not simply a polite gesture of deference to the agency seeking an advisory opinion wherein the court is free to ignore the agency's determination." *Id.* at 133, 420 A.2d at 376. Instead, once a matter is properly

---

**9.** The PUC has extensive statutory responsibility for ensuring the adequacy, efficiency, safety and reasonableness of public utility services. *See* Section 1501 of the Pennsylvania Public Utility Code, 66 Pa.C.S. § 1501. The courts of common pleas have traditionally retained original jurisdiction to entertain suits for damages against public utilities. *See Elkin.*

**10.** The Supreme Court in *Elkin* noted that where a matter is not one peculiarly within an agency's area of expertise, but is one which the courts or jury are equally well-suited to determine, the court must not abdicate its responsibility. Examples of when using the bifurcated process would be wasteful because no appreciable benefits would be forthcoming include:

[F]ailure to provide any phone service, or failure to print name and number in phone directories, etc. In this respect, we must distinguish *Behrend v. Bell of Pennsylvania*, 431 Pa. 63, 243 A.2d 346 (1968). Although that case involved the omission of customers' names and numbers from the Pittsburgh phone directory, the relief sought was not damages. Complainant prayed, in equity, that Bell and the directory printers, the Reuben H. Donnelley Corporation, be compelled to republish or amend the phone directories, or, alternatively, to distribute corrections to all persons and entities who received the faulty directories. Given the nature of the relief sought, it was eminently more appropriate to have the PUC, endowed with authority to render such relief if proper, hear the case in the first instance. Matters such as peak-hour load, WATS line distributions, *rates, etc. are clearly within the purview of the PUC's expertise.*

*Id.* at 135 n. 8, 420 A.2d at 377 n. 8 (emphasis added).

referred to the agency, that agency's determination is binding and the temporarily suspended civil litigation may continue, guided in scope and direction by the nature and outcome of the agency's determination. *Id.* at 133–34, 420 A.2d at 376. Accordingly, when the original jurisdiction of the trial court is invoked to decide a controversy, but an agency has primary jurisdiction, the proper recourse for the trial court is to *transfer* the matter to the appropriate administrative agency. *See, e.g., id.*

In determining whether the doctrine of primary jurisdiction applies, courts must look beyond the form of action to the *essence* of the underlying claims. *T.W. Phillips Gas & Oil Co. v. Peoples Natural Gas Co.,* 89 Pa.Cmwlth. 377, 492 A.2d 776, 779 (1985). For example, in *Morrow,* the Superior Court, after carefully scrutinizing the nature of the claims, found that the action, which was couched in terms of equity, was actually a challenge to rates and services and, accordingly, determined that jurisdiction was vested in the PUC. *Id.,* 479 A.2d at 551. There, a customer brought an action in equity seeking class action certification and challenging Bell's rate and service practices, and another action seeking individual damages for tortious and/or contractual wrongs. The Court stated that "[w]hen a utility's failure to maintain reasonable and adequate service is alleged, regardless of the form of the pleading in which the allegations are couched, it is for the PUC, initially, to determine whether the service provided by the utility has fallen short of the statutory standard required of it." *Id.* at 550–51 (quoting *DiSanto v. Dauphin Consol. Wa-*

*ter Supply Co.,* 291 Pa.Super. 440, 436 A.2d 197, 199 (1981)). The *Morrow* Court found that the equity action was a challenge to Bell's rate and service practices, which is an area peculiarly and exclusively within the jurisdiction and expertise of the PUC. *Id.* at 551. The Court held that, although the customer's "complaint contains averments of breach of contract, these averments [were] but a cover disguising the real thrust of [the] complaint...." *Id.*

Verizon, in contending that the trial court properly ruled that the PUC should hear this matter under the doctrine of primary jurisdiction, explains that the factual issue upon which the Complaint is based is whether Verizon correctly billed, collected, and remitted the 911 contribution rate to all lines providing "local exchange telephone service" *as that term is defined in tariffs*[11] on file with the PUC, or whether it has improperly exempted lines that fairly fall within that definition. We agree. It is well-settled law that the PUC has particular expertise in interpreting its tariffs. *United States Steel Corp. v. Pennsylvania Pub. Util. Comm.,* 850 A.2d 783, 789 (Pa.Cmwlth.2004), *petition for allowance of appeal denied,* 581 Pa. 687, 863 A.2d 1151 (2004). "Matters relating to the tariff ... are peculiarly within the expertise of the [PUC] and, as such, are outside the original jurisdiction of the courts." *Morrow,* 479 A.2d at 550 (quoting *Bell Telephone Co. v. Uni–Lite, Inc.,* 294 Pa.Super. 89, 439 A.2d 763, 765 (1982).

Turning now to the substantive statutory provision of the 911 Act in issue, we

---

**11.** Pursuant to the Public Utility Code, "tariff" is defined as:

All schedules of rates, all rules, regulations, practices, or contracts involving any rate or rates, including contracts for interchange of service, and, in the case of a common carri-

er, schedules showing the method of distribution of the facilities of such common carrier.

Act of July 1, 1978, P.L. 598, *as amended,* 66 Pa.C.S. § 102.

observe that the number of telephone subscribers who are assessed the 911 fee is a vital statistic used by the PUC in its review and calculation of the 911 contribution rate. The 911 Act contains a definitional section that explains the various terms used within the Act. The term "contribution rate" is defined as "[a] fee assessed against a telephone subscriber for the nonrecurring costs, maintenance and operating costs of a 911 system...." 35 P.S. § 7012. A "telephone subscriber" is "[a] person who contracts with a local exchange carrier within the Commonwealth for *local exchange telephone service,* either residential or commercial...." 35 P.S. § 7012 (emphasis added).

The *interpretation* of the term "local exchange telephone service" will, therefore, be dispositive of the merits of the case. The term "local exchange telephone service" is defined in the 911 Act as "[t]he provision of telephonic message transmission within an exchange, *as such is defined and described in tariffs filed with and approved by the [PUC]." Id.* (emphasis added). Thus, the fundamental question here *concerns interpretation and application of a technical and specialized term defined in *tariffs*. It, therefore, involves matters that are best determined by the PUC, employing its unique expertise. *Morrow,* 479 A.2d at 550 (quoting *Uni-Lite, Inc.,* 439 A.2d at 765). Moreover, a uniform rule explaining and applying this term to the assessment of 911 contribution rates is in the public interest. In addition, the PUC possesses the authority to order appropriate remedies; it can direct Verizon to make refunds, 66 Pa.C.S. § 1312, and to terminate any illegal practices, 66 Pa.C.S. § 501. Finally, allowing the dispute to be adjudicated in the first instance by the PUC will preserve all rights of the parties, while allowing them, as well as any subsequent reviewing court, to benefit from the PUC's opinion. Therefore, we agree with the trial court that the doctrine of primary jurisdiction is correctly applied here.[12]

■ Based on the foregoing discussion, we hold that the trial court did not abuse its discretion or commit error in determining that the PUC has primary jurisdiction over the matter. However, we conclude that it should have ordered the matter transferred, rather than dismissed without prejudice, and, therefore, we remand with the directions to the trial court to *transfer* it to the PUC pursuant to Section 5103 of the Judicial Code.[13]

12. As additional support for our position, we observe that the PUC has been statutorily designated as the entity to handle issues regarding 911 contribution rates and reviews of 911 county plans, wherein it can modify 911 contribution rates that it finds excessive to meet the costs stated in a county's plan. Furthermore, the PUC is the entity that approves requests for 911 contribution rate changes. *See* 35 P.S. §§ 7015(e); 7015(h); 7013(c). While this case does not deal with modification, acceptance, or approval of 911 contribution rates, it does involve the proper interpretation of how those rates are to be applied to the various types of telephone lines within the 911 system area, an issue similar in nature to those specifically conferred on the PUC under these Sections of the 911 Act.

13. Section 5103(a) of the Judicial Code, in pertinent part, states:

If an appeal or other matter is taken to or brought in a court or magisterial district of this Commonwealth which does not have jurisdiction of the appeal or other matter, the court or magisterial district judge shall not quash such appeal or dismiss the matter, but *shall* transfer the record thereof to the proper tribunal of this Commonwealth, where the appeal or other matter shall be treated as if originally filed in the transferee tribunal on the date when the appeal or other matter was first filed in a court....

42 Pa.C.S. § 5103(a) (emphasis added).

## ORDER

NOW, July 12, 2005, the order of the Court of Common Pleas of Erie County in the above-captioned matter is hereby affirmed to the extent that it concluded that the Pennsylvania Public Utility Commission has primary jurisdiction and the matter is remanded to the Court of Common Pleas of Erie County with the direction to transfer this matter to the Pennsylvania Public Utility Commission for disposition.

Jurisdiction relinquished.