**C. Leslie PETTKO, on behalf of himself and all others similarly situated, Appellant**

v.

**PENNSYLVANIA AMERICAN WATER COMPANY.**

Commonwealth Court of Pennsylvania.

Argued Nov. 15, 2011.

Decided Jan. 13, 2012.

Reargument Denied March 6, 2012.

475

William S. Stickman, IV, Pittsburgh, for appellant.

Donna M. Doblick, Pittsburgh, for appellee.

BEFORE: PELLEGRINI, Judge,[1] and BROBSON, Judge, and McCULLOUGH, Judge.

OPINION BY Judge BROBSON.

Appellant C. Leslie Pettko (Pettko), on behalf of himself and others similarly situated, appeals from an order of the Court of Common Pleas of Washington County (trial court), which transferred the above-captioned action to the Pennsylvania Public Utility Commission (PUC). Pettko filed a class action against appellee Pennsylvania American Water Company (PAWC), seeking to challenge PAWC's billing practices, including practices relat-

1. The decision in this case was reached prior to January 7, 2012, when Judge Pellegrini became President Judge.

ing to certain rate increases approved by the PUC, and PAWC's alleged practice of rounding up, rather than down, amounts for the various components of its bills. PAWC filed preliminary objections to Pettko's first amended complaint (complaint), which the trial court sustained, concluding that the PUC has jurisdiction over the matter. The trial court then transferred the action to the PUC. Pettko seeks review of that order.[2] We affirm the trial court's order to the extent that it transfers the matter to the PUC, but with the qualifications identified below regarding the trial court's legal conclusions.

The particular rate/billing issues that are involved in this case are: (1) a Distribution System Improvement Charge (DSIC);[3] (2) a State Tax Adjustment Charge (STAC); and (3) PAWC's alleged system of rounding individual charges in a bill up, rather than down, to the nearest cent. According to Pettko's complaint, PAWC's billing is based upon water consumption amounts, authorized taxes, fees, and surcharges. (Complaint ¶ 24.) PAWC bills customers based on a thirty-day cycle, but the cycle does not correspond to calendar months. (*Id.* ¶¶ 25–26.)

With regard to the DSIC component of PAWC's bills, Pettko alleged that although the PUC's authorizations of periodic increases in DSIC amounts are effective at the beginning of a particular calendar month, PAWC's practice is to implement the increase in that charge at the beginning of the billing cycle that predates the effective date of the increase, rather than to pro-rate the charge for the billing cycle during which the increase begins. (*Id.* ¶ 29, 31.)[4]

With regard to the STAC, Pettko alleged that the PUC authorized this charge effective January 1, 2010, but that, as with PAWC's method of implementing the increase with DSIC increases, PAWC similarly failed to pro-rate the charge such that customers would only be billed for the increase beginning with the effective date of the increase. (*Id.* ¶¶ 37–38.) With regard to both the DSIC and STAC increases, Pettko alleged that PAWC's billing practices improperly resulted in retroactive billing of customers for fee increases that did not become effective until some point after the billing cycle began. (*Id.* ¶ 40.)

Pettko also challenged PAWC's alleged practice of rounding up every individual

2. We note that Pettko initially appealed to the Superior Court, which transferred the matter to this Court by order dated April 25, 2011. Pursuant to Section 742 of the Judicial Code, 42 Pa.C.S. § 742, the Superior Court has jurisdiction over all appeals from orders of common pleas courts unless jurisdiction is vested in this Court under Section 762 of the Judicial Code, 42 Pa.C.S. § 762. We perceive no basis in Section 762 of the Judicial Code upon which we could conclude that this Court has jurisdiction over the trial court's order. The parties, however, did not raise the issue of this Court's lack of jurisdiction. Pennsylvania Rule of Appellate Procedure 741 provides that "[t]he failure of an appellee to file an objection to the jurisdiction of an appellate court on or prior to the last day under these rules for the filing of the record shall, unless

the appellate court shall otherwise order, operate to perfect the appellate jurisdiction of such appellate court, notwithstanding any provision of law vesting jurisdiction of such appeal in another appellate court." *See* 42 Pa.C.S. § 704(a). Therefore, the parties have waived any objection to this Court's jurisdiction. In the interest of judicial economy, this Court will decide the merits of the appeal.

3. DSIC "is used for infrastructure improvements to water and sewer delivery systems and to fund the replacement of water distribution facilities." (Complaint ¶ 27.)

4. Pettko alleged that during the 2009 calendar year, the PUC approved two DSIC rate increases, in July and again in October.

charge encompassed on a customer's bill to the nearest cent, even though "accepted rules of arithmetic would dictate rounding down." (*Id.* ¶ 41.) Pettko averred that "[a]lthough individually small, the practice of rounding up to the next cent no matter whether it is the nearest cent, when aggregated among the components in each customer's bill and when all of the customers' bills are added together, represents a considerable amount of money." (*Id.* ¶ 43.) Pettko asserted that "absent individually calculating each element of their bills, the customers have no idea that the total is artificially inflated by [PAWC]'s rounding practices." (*Id.* ¶ 45.) Pettko claimed that PAWC's practices (1) violate Section 2(4)(xxi) of the Unfair Trade Practices and Consumer Protection Law (UTPCPL);[5] (2) constitute a conversion; and (3) constitute a breach of contract.

PAWC filed preliminary objections to Pettko's complaint averring the following grounds: (1) the PUC, rather than the trial court, has primary and exclusive jurisdiction over Pettko's complaint, because Pettko's complaint essentially seeks to challenge PAWC's billing practices, and the PUC could provide complete relief to Pettko (and the putative class) if the PUC finds merit in Pettko's claims;[6] (2) Pettko failed to exhaust an available statutory remedy—an action before the PUC; and

(3) the complaint fails to comply with Pennsylvania Rule of Civil Procedure No. 1028(a)(2), because Pettko did not include any written contract between him (and the putative class) and PAWC in relation to Pettko's breach of contract claim. Before the trial court, Pettko responded to PAWC's jurisdictional argument by asserting that his claims for relief are ones that the law recognizes in addition to whatever relief he may be entitled to receive from the PUC. The trial court concluded that the PUC has both primary and exclusive jurisdiction over Pettko's claims, dismissed Pettko's complaint, and transferred the matter to the PUC.

In this appeal,[7] Pettko raises the following issues for our review: (1) whether the trial court erred in concluding that the PUC has primary and/or exclusive jurisdiction over Pettko's claim where Section 103(c) of the Public Utility Code (Code)[8] provides that remedies available from the PUC are cumulative and in addition to common law and statutory remedies; and (2) whether the trial court erred in concluding that it lacks jurisdiction to render a determination on the merits of Pettko's claims.

We begin, as the trial court did, by considering whether the PUC has primary

---

**5.** Act of December 16, 1968, P.L. 1224, *as amended*, 73 P.S. §§ 201–2(4)(xxi). This subsection of the UTPCPL provides a catch-all definition of the terms "unfair methods of competition" and "unfair or deceptive acts or practices" by including the following conduct: "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."

**6.** PAWC alternatively requested the trial court to grant a stay of the proceedings "until such time as the [PUC] is asked to make, and does make, a final determination related to PAW[C]'s calculation of billing of the [DSIC] and [STAC]."

**7.** This Court's standard of review of a trial court's order sustaining preliminary objections to a complaint is limited to considering whether the trial court erred as a matter of law or committed an abuse of discretion. *Muncy Creek Twp. Citizens Comm. v. Shipman,* 132 Pa.Cmwlth. 543, 573 A.2d 662, 663 (1990). In considering whether a trial court properly sustained preliminary objections, this Court accepts as true all well-pled facts and all inferences reasonably deducible therefrom. *Cowell v. Com., Dep't of Transp.,* 883 A.2d 705 (Pa.Cmwlth.2005).

**8.** 66 Pa.C.S. § 103(c).

jurisdiction in this matter.[9] In *Feingold v. Bell of Pennsylvania*, 477 Pa. 1, 383 A.2d 791 (1977), our Supreme Court reviewed a trial court's conclusion that it lacked subject matter jurisdiction over the plaintiff's equity action against a telephone company.[10] The plaintiff sued the telephone company based upon the company's alleged failure to maintain a referral system after the plaintiff moved his business and obtained a new phone number. The plaintiff alleged that he lost clients as a consequence of the referral system failure and that the telephone company exacerbated the problem when it published its new phone book with the plaintiff's old telephone number. The plaintiff sought injunctive relief and compensatory and punitive damages.

The trial court in that case agreed with the telephone company's argument that the plaintiff had failed to exhaust a putative administrative remedy available in an action before the PUC. The Supreme Court phrased the issue before it as "whether [the plaintiff] had adequate administrative remedies available under the Public Utility Law." *Feingold*, 477 Pa. at 7, 383 A.2d at 794. Based upon its conclu-

sion that the plaintiff sought damages as well as injunctive relief, the Supreme Court concluded that the available administrative remedy was not adequate to address the plaintiff's requested relief: "In the instant case, [the plaintiff] could not have been made whole by the PUC, thus the administrative remedy was not 'adequate and complete.'" *Id.* at 10–11, 383 A.2d at 796 (citations omitted). Thus, the Supreme Court remanded the matter to the trial court.

Following *Feingold*, our Supreme Court in *Elkin v. Bell Telephone Company*, 491 Pa. 123, 420 A.2d 371 (1980), addressed a similar question, but resolved the matter on a distinct jurisdictional basis. In *Elkin*, the plaintiff filed a four-count trespass action in the Court of Common Pleas of Montgomery County, asserting various negligence claims involving averments that the telephone company had failed to furnish reasonable telephone service, and requesting both compensatory and punitive damages. The telephone company filed preliminary objections, challenging the trial court's subject matter jurisdiction. The trial court stayed the matter until the

9. In contrast to the primary jurisdiction doctrine, we note that courts have defined subject matter jurisdiction generally as a court's or tribunal's power to hear cases of the class to which the case at issue belongs. *Verholek v. Verholek*, 741 A.2d 792, 798 (Pa.Super.1999), *appeal denied*, 563 Pa. 665, 759 A.2d 388 (2000). This Court has observed also the distinction between subject matter jurisdiction and equity jurisdiction, "which describes the remedies available in equity" and which is a term "used to refer to invocation of the extraordinary remedies of equity." *Lashe v. N. York Cty. Sch. Dist.*, 52 Pa.Cmwlth. 541, 417 A.2d 260, 262 (1980). Article V, Section 5 of the Pennsylvania Constitution is the ultimate source of jurisdiction for the courts of common pleas, and our General Assembly has provided further definition to the "manner in which the common pleas courts' jurisdiction is exercised." *Riedel v. Human Relations Comm'n of the City of Reading*, 559 Pa. 34, 42,

739 A.2d 121, 125 (1999) (Saylor, J., concurring). Similarly, the General Assembly creates and sets the limits of the competency of administrative agencies to adjudicate certain classes of cases. In this case, there can be no dispute that the courts of common pleas have subject matter jurisdiction over common law claims such as conversion and breach of contract involving private individuals and businesses and with regard to causes of action arising under the UTPCPL.

10. At the time that the plaintiff in *Feingold* filed his appeal, the Supreme Court was vested with jurisdiction to hear such appeals directly from the trial court. *Feingold*, 477 Pa. at 4 n. 1, 383 A.2d at 792 n. 1 (noting that after appeal was filed Supreme Court adopted Pa. R.A.P. 702, "vesting appellate jurisdiction in cases such as this in the Superior Court.")

PUC could issue a determination regarding the appropriate standards for the service at issue.

The plaintiff filed a complaint with the PUC, raising the same claims as those he raised in his action before the trial court. The PUC, following hearing, issued an order in which it determined that the plaintiff had failed to substantiate his allegations of inadequate service. The plaintiff did not challenge the PUC's order, but filed a request with the trial court to proceed with his stayed civil action. The telephone company filed a motion for summary judgment based upon the collateral effect of the PUC's resolution of the issues it had addressed, which the trial court denied. The telephone company appealed that order to the Superior Court, which reversed the trial court's order and entered judgment in favor of the telephone company. The Supreme Court granted the plaintiff's petition for allowance of appeal for the purpose of evaluating the effect of the PUC's order on the plaintiff's civil action.

■ The plaintiff in *Elkin* relied upon the Supreme Court's analysis in *Feingold*, asserting that the Supreme Court intended for trial courts to have exclusive jurisdiction over actions relating to public utilities if the action involves a request for damages. The Supreme Court rejected this argument as sweeping too broadly. After observing that the focus of the Supreme Court's analysis in *Feingold* concerned whether an administrative remedy is adequate, the Supreme Court stated that the plaintiff's position "ignore[d] the reality that frequently *both* the courts and administrative agencies must each play roles in the adjudication of certain matters." *Id.* at 131, 420 A.2d at 375 (emphasis in original). To address such circumstances, our Supreme Court reasoned, the courts developed the doc-

trine of primary jurisdiction. *Id.,* 420 A.2d at 376. As described generally in *Elkin,* the doctrine of primary jurisdiction permits the bifurcation of a plaintiff's claim, whereby a trial court, faced with a claim requiring the resolution of an issue that is within the expertise of an administrative agency, will first cede the analysis of the issue or issues to that agency. Once the agency resolves the particular issue or issues over which it has primary jurisdiction, the trial court may proceed, if necessary, to apply the agency's decision to the dispute remaining before the trial court. The doctrine "creates a workable relationship between the courts and administrative agencies wherein, in appropriate circumstances, the courts can have the benefit of the agency's views on issues within the agency's competence." *Id.* at 131–32, 420 A.2d at 376.

■ The Supreme Court explained:

The doctrine serves several purposes, chief of which are the benefits to be derived by making use of the agency's special expertise in complex areas with which judges and juries have little familiarity. Another important consideration is the statutory purpose in the creation of the agency—the powers granted by the legislature and the powers withheld. And, another fundamental concern is the need to promote consistency and uniformity in certain areas of administrative policy. It has been noted that these purposes are frequently served in, and the doctrine of primary jurisdiction principally applicable to, the controversies concerning the so-called "regulated industries."

*Id.* at 132–33, 420 A.2d at 376 (citations omitted). When a trial court calls upon an administrative agency to exercise its primary jurisdiction and evaluate a particular pertinent issue, and the agency renders a determination, that adjudicatory action has

a binding, collateral effect upon the trial court's proceedings, unless a party successfully challenges the determination through the appeal process. *Id.* Such determinations by administrative agencies, therefore, serve more than a merely advisory function. As we stated in *County of Erie v. Verizon North, Inc.*, 879 A.2d 357 (Pa.Cmwlth.2005), under the doctrine of primary jurisdiction, a trial court may "refrain from hearing a case" over which it might otherwise have jurisdiction, "where protection of the integrity of [a] regulatory scheme dictates that the parties preliminarily resort to the agency that administers the scheme for the resolution of disputes." *County of Erie,* 879 A.2d at 363. "Once the administrative tribunal has determined the issues within its jurisdiction, then the temporarily suspended civil litigation may continue, guided in scope and direction by the nature and outcome of the agency determination." *Elkin,* 491 Pa. at 133–34, 420 A.2d at 377.

Our Supreme Court, however, admonished trial courts not to abdicate judicial responsibility, and summarized the circumstances in which the primary jurisdiction doctrine applies, as follows:

> [W]here the subject matter is within an agency's jurisdiction *and* where it is a complex matter requiring special competence, with which the judge or jury would not or could not be familiar, the proper procedure is for the court to refer the matter to the appropriate agency. Also weighing in the consideration should be the need for uniformity and consistency in agency policy and the legislative intent. Where, on the other hand, the matter is not one peculiarly within the agency's area of expertise, but is one which the courts or jury are equally well-suited to determine, the court must not abdicate its responsibility. In such cases, it would be wasteful to employ the bifurcated procedure of referral, as no appreciable benefits would be forthcoming.

*Id.* at 134–35, 420 A.2d at 377 (footnote omitted).

Additionally, in *County of Erie* this Court confirmed the notion that the nature of the claims a plaintiff brings is not necessarily determinative of the question of whether the doctrine of primary jurisdiction applies. In *County of Erie,* we quoted the Superior Court's decision in *Morrow v. Bell Telephone Company of Pennsylvania,* 330 Pa.Super. 276, 479 A.2d 548 (1984), as follows: "[W]hen a utility's failure to maintain reasonable and adequate service is alleged, regardless of the form of the pleading in which the allegations are couched, it is for the PUC, initially, to determine whether the service provided by the utility has fallen short of the statutory standard required of it." *County of Erie,* 879 A.2d at 364 (quoting *Morrow,* 479 A.2d at 550–51).

■ In this case, Pettko argues that his claims under the UTPCPL and his common law claims do not implicate any regulatory matters within the PUC's subject matter competency. Pettko contends that the issues he raises are simple tort, contract, and statutory claims that do not require the expertise of the PUC. Pettko points out that he does not challenge the effective dates of the rate increases, the actual rates the PUC established, or that PAWC is authorized to bill its customers for DSIC and STAC charges. Rather, Pettko claims that the only issue before the trial court was PAWC's action of failing to pro-rate its charges. PAWC's conduct, Pettko alleges, was deceptive. Pettko contends that these discrete matters do not require the exercise of the PUC's expertise.

Pettko asserts that the Superior Court's decision in *Byer v. Peoples Natural Gas*

*Company*, 251 Pa.Super. 75, 380 A.2d 383 (1977), supports his position. In *Byer*, a gas utility entered a contract with natural gas consumers whereby the utility agreed to provide the consumers a special rate for gas (for the period from May 15 through October 15 of each year) in exchange for the consumers' purchase from the utility of gas air-conditioning systems. The special gas rate was to be effective for the life of the systems. In 1975, however, after the PUC approved the utility's tariff, the utility began to charge the rate established by the tariff instead of the special rate. The consumers filed an action in assumpsit with the Court of Common Pleas of Allegheny County, and the utility filed preliminary objections claiming that the PUC had jurisdiction over the claim. The trial court dismissed the preliminary objections.

The Superior Court concluded that, based upon the record, it could not determine whether the consumers were challenging the rates established or were merely seeking damages based upon the alleged breach of the utility's promise in connection with the sale of the air-conditioning system. The Superior Court reasoned that, in the latter situation, the trial court, rather than the PUC, would have jurisdiction. Pettko asserts that, like the scenario in *Byer*, he is not seeking to challenge the established rates, but rather seeking to recover overcharges.

In response, PAWC argues that the PUC has primary jurisdiction over Pettko's claims because the essence of those claims relate to PAWC's billing practices. PAWC suggests that the PUC's broad regulatory powers, including the PUC's power to regulate the rates a utility charges to a customer and the power to prescribe regulations and practices with which utilities must comply, support PAWC's view that the PUC has primary jurisdiction in this case. In echoing the trial court's analysis, PAWC refers to Section 102 of the Code,[11] which defines the term "rate" to include "every ... charge ... or other compensation whatsoever of any public utility ... made, demanded, or received for any service within this part, offered, rendered, or furnished by such public utility ... and any rules, regulations, *practices,* classifications or contracts affecting any such compensation, *charge,* fare, toll, or rental." (Emphasis added.)

PAWC refers to our Supreme Court's decision in *Einhorn v. Philadelphia Electric Company,* 410 Pa. 630, 190 A.2d 569 (1963), in which the court considered a petition for depositions, discovery, and inspection filed by a party "escheater," seeking evidentiary support for a future claim he hoped to file in the Court of Common Pleas of Philadelphia County. The hopeful litigant sought to recover overcharges he believed an electric company had billed for the installation of underground electric service facilities. The litigant averred that the payments the electric company received exceeded certain costs that the electric company's filed tariff permitted. The Supreme Court agreed with the electric company's preliminary objections, which asserted that only the PUC could decide initially the issue of whether the charges exceeded the rates identified in the tariff. The Supreme Court considered the following statutory language, which provides that "[n]o action shall be brought in any court for a refund, unless and until the commission shall have determined that the rate in question was ... in excess of the applicable rate contained in an existing and effective tariff, and then only to recover such refunds as may have been awarded and directed to be paid by the commission

---

11. 66 Pa.C.S. § 102.

in such order."[12] *Einhorn,* 410 Pa. at 634, 190 A.2d at 571. The Supreme Court concluded that:

> Both the Public Utility Law and the decisions of this Court, with unmistakable clarity, require that questions dealing with excessive charges be decided in the first instance exclusively by the Commission. In the absence of such determination, there is no escheatable property.

*Id.* at 634–35, 190 A.2d at 571.

In addition to this issue, we note that the Reproduced Record (R.R.) in this case includes the PAWC tariff at issue. The tariff includes details relating to PAWC's charges for the STAC and DSIC. For example, one page of the tariff referring to the DSIC includes the following notation:

> In addition to the net charges provided for in this Tariff, a charge of 0.40% will apply to all bills rendered with an ending reading date equal to or greater than the effective date of the tariff supplement for all rate zones except Rate Zone 40.(I)

> The above charges will be recomputed quarterly, using the elements prescribed by the Commission in its Order dated August 26, 1996 at Docket No. P–00961031.

(R.R. at 123a.) If this language is applicable to the DSIC at issue in this case, some of this language could be construed to mean that PAWC was not required to prorate the DSIC charge. Additionally, the tariff includes formulae PAWC is required to use, which direct that

> [t]he charge will be expressed as a percentage carried to two decimal places and will be applied to the total amount billed to each customer under the Company's otherwise applicable rates and charges, excluding ... the [STAC].... To calculate the DSIC, one-fourth of the annual fixed costs associated with all property eligible for cost recovery under the DSIC will be divided by the Company's projected revenue for sales of water for the quarterly period during which the charge will be collected....

(R.R. at 125a.) These aspects of the tariff (and perhaps other more pertinent provisions of the tariff) appear to the Court to provide a PUC-approved method for determining charges pertaining to the DSIC and STAC which are the subject of Pettko's claims. These examples illustrate why the PUC is in the best position to evaluate in the first instance the claims Pettko initiated in the trial court. We believe, therefore, that the trial court correctly deferred to the PUC's expertise on the question of whether the tariff supports Pettko's or PAWC's position.

Although none of the decisions upon which the parties rely specifically refer to billing practices as being a subject within the PUC's expertise, the above-noted aspects of the tariff suggest that the method of calculating the charges, including the place value for calculating fees, is a subject that the PUC oversees and interprets when it *approves* a tariff. Moreover, we conclude that the question of whether a utility's manner of billing is in compliance with a tariff is encompassed in the claims relating to billing practices that Pettko has raised in his complaint. ("It is well-settled that the PUC has particular expertise in interpreting its tariffs.") *County of Erie,* 879 A.2d at 364, *citing United States Steel Corp. v. Pennsylvania Pub. Util. Comm'n,* 581 Pa. 687, 863 A.2d 1151 (2004). If the PUC reviews the tariff and PAWC's billing

---

**12.** As noted below, Section 1312(c) of the Code, 66 Pa.C.S. § 1312(c), retains this language.

methodology and concludes that the billing practices are compliant with the tariff, the civil matter will be concluded, subject of course to appellate review of the PUC's decision.

 The trial court here also concluded that the PUC has not only primary jurisdiction, but also exclusive jurisdiction over Pettko's claims. The trial court relied upon the Superior Court's decision in *DiSanto v. Dauphin Consolidated Water Supply Company*, 291 Pa.Super. 440, 436 A.2d 197 (1981) (*DiSanto*). In *DiSanto*, the court addressed a complaint filed by a real estate developer who entered into a contract with a water company to provide water services to a development. The water company rejected the developer's request to have an outside contractor install the water facilities and refused to provide service over the lines installed by the outside contractor. The developer then paid the water company for installation by the water company's preferred contractor, and the developer filed a complaint against the water company seeking injunctive and monetary relief. The trial court overruled the water company's preliminary objections, which asserted that the PUC had "initial" (or primary) jurisdiction over the matters that the developer raised. The Superior Court then considered whether the PUC had exclusive jurisdiction over the claims in the complaint or whether the "bifurcated procedure adopted by *Elkin* should be followed." *DiSanto*, 436 A.2d at 202. The Superior Court opined:

> Such a determination ... is dependent upon the adequacy of the administrative remedies available to the appellee through the PUC. If the available administrative remedies are complete and adequate to make the complainant whole, then the PUC has exclusive jurisdiction over the controversy and there is no recourse to the courts outside of the

normal channels of appeal to the Commonwealth Court. However, where the administrative remedies are not adequate and complete, the PUC's jurisdiction is not exclusive and an action for damages may be brought in a court of common pleas based upon the PUC's initial determination of the matters within its realm of expertise.

*Id.* at 202 (citation and footnote omitted). Ultimately, the Superior Court concluded that the PUC could make the developer whole, because the PUC had the power to issue an order addressing the reasonableness of the utility's actions by (1) reforming the contract for installation, (2) determining a reasonable rate, (3) allocating appropriate interest and refund on and of excessive rates paid, and (4) directing the utility to discontinue any improper practices. Thus, the matter was "exclusively within the PUC's jurisdiction and no recourse to the courts, outside of the normal appellate process," was warranted. *Id.* Thus, the Superior Court reversed the trial court's order and transferred the matter to the PUC.

In this case, the trial court noted Section 1312(a) of the Code, which provides for refunds as follows:

> If, in any proceeding involving rates, the commission shall determine that any rate received by a public utility was unjust or unreasonable, or was in violation of any regulation or order of the commission, or was in excess of the applicable rate contained in an existing and effective tariff of such public utility, the commission shall have the power and authority to make an order requiring the public utility to refund the amount of any excess paid by any patron, in consequence of such unlawful collection ... together with interest at the legal rate from the date of such excessive payment....

66 Pa.C.S. § 1312(a). As stated above, the term "rates" is defined by Section 102 of the Code as "every ... charge ... or other compensation whatsoever of any public utility ... made, demanded, or received for any service within this act, offered, rendered, or furnished by such public utility ... and any rules, regulations, *practices,* classifications or contracts affecting any such compensation, *charge,* fare, toll, or rental." (Emphasis added.) Under these provisions, Pettko and his fellow PAWC customers would be entitled to a refund for any payments they made above the charges the PUC may determine PAWC was entitled to bill under the tariff.

We observe, however, that, as the Supreme Court held in *Feingold,* under the doctrine of exhaustion of administrative remedies, an administrative agency does not have exclusive jurisdiction unless it has the power to award relief that will make a successful litigant whole. In *DiSanto,* the Superior Court concluded that the PUC had both primary and exclusive jurisdiction. The Superior Court reasoned that the PUC had exclusive jurisdiction because it could provide a remedy that would make DiSanto whole. In this case, however, Pettko has included claims that, if he is successful, would provide him with relief that the PUC is not empowered to grant.

We believe that our inquiry must focus on the wrongs alleged to have been perpetrated by PAWC and consider whether the PUC has the ability to provide a statutory remedy for the alleged wrongful conduct, in order to determine if the PUC could make Pettko whole. Through his claims for breach of contract and conversion, Pettko essentially seeks redress for PAWC's alleged acts of overcharging its customers. Through the UTPCPL claim, Pettko seeks redress for PAWC's alleged deceptive trade practices above and be-

yond overcharging. The statutory refund remedy available through the PUC is sufficient to provide Pettko with relief for alleged overcharging; however, there is no remedy available through the PUC to provide relief for deceptive trade practices. Thus, while *DiSanto* supports the notion that, at least with regard to Pettko's breach of contract and conversion claims, the trial court correctly concluded that a statutory refund action before the PUC could provide Pettko with complete relief, we cannot similarly conclude that an action before the PUC would provide Pettko with complete relief with respect to his UTPCPL claim. Moreover, the relief potentially available to Pettko under the UTPCPL is substantially distinct from the relief available under the Public Utility Code. As Pettko contends, the General Assembly's objectives in enacting the UTPCPL are reflected in the remedies providing for potential exemplary and treble damages for successful plaintiffs. Such remedies serve both a deterrent and punitive function—goals not identical to those contained in the Public Utility Code.

In this regard, Pettko relies upon Section 103(c) of the Public Utility Code (Code),[13] which provides as follows:

> Remedies cumulative. Except as otherwise provided in this part, nothing in this part shall abridge or alter the existing rights of action or remedies in equity or under common or statutory law of this Commonwealth, and the provisions of this part shall be cumulative and in addition to such rights of action and remedies.

This section supports Pettko's assertion that he may be entitled to pursue a claim under the UTPCPL once the PUC completes its initial review of Pettko's claims.

---

13. 66 Pa.C.S. § 103(c).

The UTPCPL clearly offers a cumulative remedy for aggrieved utility customers.

In response to Pettko's arguments, PAWC points out that the refund provision of the Code contains language of a limiting nature regarding the rights of a consumer to seek redress for over-billing. Section 1312(c) of the Code pertinently provides as follows:

Condition for suit. No action shall be brought in any court for a refund, unless and until the commission shall have determined that the rate in question was ... in excess of the applicable rate contained in an existing and effective tariff, and then only to recover such refunds as may have been awarded and directed to be paid by the commission in such order.

66 Pa.C.S. § 1312(c). Although this provision confirms our conclusion above regarding the applicability of the primary jurisdiction doctrine in this case, this section of the Code also creates a specific limitation on the ability of a party to bring a lawsuit for a *refund* in a common pleas court. The latter phrase of this provision indicates that when a party seeks a *refund* for a payment that exceeds the amount a utility is due under a tariff, a party may bring suit only to recover refund amounts to which the PUC has determined a consumer is entitled. The last phrase appears to provide authority for trial courts to entertain only actions seeking to enforce a judgment entered by the PUC against a utility. This provision, however, pertains only to refund actions, and not to other statutory remedies that are *cumulative* to the refund remedy.

The UTPCPL provides a distinct remedy for particular deceptive and/or fraudulent conduct, including the actual amount of damages or $100 for every violation of the Law, whichever is greater. Further, as Pettko notes, the UTPCPL provides for the possible award of exemplary or treble damages. Although the pecuniary beneficiaries of an award under the UTPCPL are generally individuals who have engaged in commerce with a person or business who acts deceptively, the purpose behind the award of damages (which may be greater than the financial loss to the consumers) is to punish and/or deter such fraudulent conduct. We do not agree with the trial court's "make-whole" reasoning, because that analysis ignores the fact that the General Assembly, through the statutory provisions of the UTPCPL, has provided potential remedies that are greater than the remedy provided through the Code's refund provision. We see no legislative intent to preclude parties from availing themselves of those additional remedies.

For the reasons identified above, including the fact that the Code does not authorize the PUC to remedy fraudulent conduct (unlike the UTPCPL), we do not view the language relating to *refunds* to limit the cumulative remedies to which Section 103(c) of the Code refers. Although the action Pettko has brought seeks damages for overpayments, if Pettko is successful before the PUC, he and others similarly situated will be able to recover those overpayments through the Code's refund provision. Thus, we conclude that the PUC has not only primary jurisdiction, but also exclusive jurisdiction over claims based merely on overpayment under the tariff. On the other hand, while we agree that the PUC has primary jurisdiction over the general question of whether PAWC's billing practices comport with the tariff, the refund action does not eliminate Pettko's right to seek relief under the UTPCPL, because the PUC has no power to award relief, if it is appropriate, for that claim.

With the above conclusions in mind, the remaining question we must consider is whether the trial court correctly trans-

ferred the matter to the PUC. Unlike *Elkin,* where the trial court stayed the matter and the plaintiff filed an identical action with the PUC, in *County of Erie* the trial court dismissed the underlying civil action without prejudice, based upon its conclusion that the PUC had primary jurisdiction over the matter. Thereafter, the plaintiff, the County of Erie, filed complaints containing identical averments with the PUC and the Pennsylvania Emergency Management Agency. In reviewing the trial court's conclusion that the PUC had primary jurisdiction, this Court opined that the trial court should have ordered the matter transferred to the PUC rather than dismissing the matter without prejudice, based upon Section 5103(a) of the Judicial Code, 42 Pa.C.S. § 5103(a); *County of Erie,* 879 A.2d at 365. Thus, in accordance with our decision in *County of Erie,* the proper course, given our conclusion that the PUC has primary jurisdiction over the general question of the propriety of PAWC's billing practices, is to affirm the trial court's order.[14]

### ORDER

AND NOW, this 13th day of January, 2012, the order of the Court of Common Pleas of Washington County (trial court), dated August 27, 2010, is AFFIRMED to the extent that it transferred the matter to the Pennsylvania Public Utility Commission (PUC) due to the trial court's lack of jurisdiction *at this stage of the proceedings* because the PUC has primary and exclusive jurisdiction over claims based on an overpayment under the PUC's tariff and the question of whether Pennsylvania American Water Company's (PAWC) bill-

ing practices comport with the tariff. For purposes of clarification, in the event that Appellant's refund action before the PUC is successful, Appellant may seek further relief before the trial court under the Unfair Trade Practices Consumer Protection Law (UTPCPL) consistent with this opinion, because the PUC lacks jurisdiction over claims under the UTPCPL for unfair trade practices.

---

14. We note that we do not believe that this process would result in a double recovery for Pettko and the members of the putative class. If the PUC agrees with Pettko, it will order a refund, and the UTPCPL aspect of the case can proceed with the understanding that the remedy that the trial court could provide must reflect the remedy the PUC awarded.