IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Charles Johnson and Laura Johnson,   :
                  Petitioners   :
  :
      v.   :
  :
Pennsylvania Public Utility   :
Commission,   :   No. 192 C.D. 2024
             Respondent   :   Submitted: March 4, 2025


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge
              HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY JUDGE FIZZANO CANNON               FILED: April 15, 2025


Charles Johnson and Laura Johnson (Johnsons) seek review of two orders of the Pennsylvania Public Utility Commission (PUC). In the first order, dated December 21, 2023, the PUC determined that it had jurisdiction over the Johnsons' formal complaint (Formal Complaint) regarding certain conduct by Duquesne Light Company (Duquesne Light)[1] in connection with the possible location of a high voltage electrical transmission line across real property purchased by the Johnsons. In the second order, dated February 1, 2024, the PUC denied the Johnsons' request for reconsideration and closed the case. Upon review, we reverse the first PUC order and vacate the second PUC order as moot.

## I. Background

In 2019, in a separate action, the Johnsons filed a common law tort complaint (Tort Action) against Duquesne Light in the Court of Common Pleas of

---

[1] Duquesne Light filed a notice of intervention in this Court on April 15, 2024.

Allegheny County (Trial Court) alleging negligence and recklessness by Duquesne Light in failing to notify the Johnsons or their predecessors in title of the potential transmission line placement before the Johnsons purchased the property in 2017. *See* Reproduced Record (RR) at 4a-5a. The Trial Court overruled Duquesne Light's preliminary objections but stayed the Tort Action "[p]ending a [d]etermination by the PUC as to the duty owed by [Duquesne Light] to [the Johnsons] regarding the location of the proposed transmission line [and] the appropriate time to give notice thereof." *Johnson v. DQE Holdings LLC* (Allegheny Cnty. C.P., No. GD-19-007611, filed Feb. 18, 2020).

The Johnsons petitioned the Superior Court for leave to file an immediate appeal, which the Superior Court denied by order dated March 15, 2021. *Johnson v. DQE Holdings* (Pa. Super., No. 44 WDM 2020, filed Mar. 15, 2021). The Johnsons then filed a petition for allowance of appeal in the Pennsylvania Supreme Court, which denied the petition by order dated December 21, 2021. *Johnson v. DQE Holdings*, 269 A.3d 1226 (Pa. 2021).

On May 20, 2022, the Johnsons filed the Formal Complaint "under protest." RR at 2a-9a. The Johnsons asserted that the PUC does not have jurisdiction to make the determinations contemplated by the Trial Court, in that Duquesne Light "was acting outside PUC regulations and its liability is based in common law." RR at 5a. Thus, the Johnsons insisted that the PUC lacked jurisdiction over any issues raised in the Tort Action, which asserted only common law tort claims not based on any statute or statutory duty of Duquesne Light. *Id.*

In the Formal Complaint, the Johnsons averred that they sued Duquesne Light in the Tort Action based on alleged "negligent and reckless conduct" because Duquesne Light did not notify the Johnsons or their predecessors in title, before the

2

Johnsons completed their purchase of the property in April 2017, that the property was on one of the possible routes for a planned high-voltage electricity transmission line. RR at 4a. The Johnsons alleged that information about the impending sale of the property was publicly available and that Duquesne Light "therefore had actual or constructive notice at all times that the property was being marketed to the public and, then, that an unwitting buyer was about to purchase it." *Id.* The Johnsons asserted that "[h]ad [Duquesne Light] timely notified the sellers, who would have been obligated to disclose the routes to [the Johnsons], and/or timely notified [the Johnsons] as identifiable buyers, [they] would not have purchased the property." *Id.* The Johnsons claimed they were "traumatized" by the course of events and that Duquesne Light's untimely notice of the possible routes of the transmission line "placed a cloud on the property that rendered it unsalable and/or devalued the property." *Id.* While insisting that Duquesne Light owed them a duty of early notification, the Johnsons also maintained that Duquesne Light acted prematurely in providing public notice of the possible routes before it submitted any application to the PUC for approval of either route. *Id.* Thus, according to the Johnsons, Duquesne Light "unnecessarily placed a cloud on the property, negatively impacting its salability and value. As such, [Duquesne Light] had a duty to act reasonably to remove the cloud from the property as quickly as practical and to not unreasonably prolong it." *Id.* However, Duquesne Light waited from September 2017 until September 2020 before removing the proposed alternate routes from its website and informing the Johnsons their property was not "impacted," and until November 2020 before providing the Johnsons with written confirmation that their property would not be "impacted" by the location of the transmission line. *Id.* at 5a. The Johnsons alleged that, through its course of conduct, Duquesne Light "purposefully and

3

unnecessarily prolonged the public cloud on [their] property, rendering it unsalable[,] . . . and caused [them] to incur the costs of maintaining and owning the property for three years." *Id.* In the Formal Complaint, the Johnsons requested relief as follows:

> Under protest, [the Johnsons] request that the PUC make two determinations:
>
> (1) Whether the PUC has jurisdiction to determine the duty owed by [Duquesne Light] to [the Johnsons] regarding (1) the location of proposed transmission lines impacting property that was publicly listed for sale and which [the Johnsons] were about to buy, and (2) the appropriate time to give Notice thereof to the owner of the property, where [Duquesne Light] had mapped two high voltage power lines through the property before [the Johnsons] bought it, and had prepared a notice to the sellers before [the Johnsons] bought the property, but did not mail the notice until eleven days after [the Johnsons] bought it.
>
> (2) If the PUC determines that it has jurisdiction to make the above determination, then [the Johnsons] request that the PUC determine that [Duquesne Light] acted negligently and recklessly and is consequently liable to [the Johnsons] under common law tort principles for the harm [the Johnsons] suffered as a result of [Duquesne Light's] acts and failures to act, as [Duquesne Light's] conduct in providing notice and announcing the [transmission line location] was not governed by PUC regulations.

*Id.* at 6a.

In December 2022, the Johnsons filed a "Motion for Determination that the PUC Lacks Jurisdiction to Decide the Question Transferred By the [Trial] Court . . . and To Transfer the Matter Back to the [Trial] Court . . ." (Motion for Determination). *See* RR at 174a. In an initial decision dated June 22, 2023, an administrative law judge (ALJ) dismissed the Formal Complaint for lack of

4

jurisdiction and directed the transfer of the matter to the Trial Court. *Id.* at 142a-43a. In response to exceptions filed by Duquesne Light, in a decision dated December 21, 2023, the PUC modified the ALJ's decision and concluded that the PUC does have jurisdiction over the issues raised in the Formal Complaint. *Id.* at 194a. Nonetheless, the PUC declined to force the Johnsons to continue litigating the Formal Complaint "against their will," inasmuch as they had "filed their [Formal] Complaint 'under protest,' and consistently and repeatedly averred that their claims against Duquesne [Light] in the Tort Action are common law tort claims based on recklessness and negligence and that they are not alleging that Duquesne [Light] violated any [PUC] Regulations or rules." *Id.* at 195a. Accordingly, the PUC directed the Johnsons to indicate in writing within 30 days whether they wished to continue litigating the Formal Complaint; if they did not respond or did not wish to continue, the matter would be dismissed. *Id.* at 195a-97a. The Johnsons filed a request for reconsideration, which the PUC denied by order dated February 1, 2024, concluding that the Johnsons had raised no new or novel arguments in the request for reconsideration.[2] *Id.* at 220a. The Johnsons now seek review of both orders in this Court.[3]

---

[2] We note that, notwithstanding the PUC's provision in the December 21, 2023 order holding the matter in abeyance to allow the Johnsons to indicate whether they would continue to pursue the Formal Complaint, the February 1, 2024 order denying reconsideration also ordered that the Formal Complaint be closed. However, the Johnsons have not raised any issue for review in this Court considering that portion of the February 1, 2024 order.

[3] As this Court has explained, our scope and standard of review are as follows:

> On a petition to review a decision of [the] PUC, our standard of review is limited to determining whether substantial evidence supports the necessary findings of fact, whether [the] PUC erred as a matter of law, and whether constitutional rights were violated. . . . We defer to [the] PUC's interpretation of the Public Utility Code[,

## II. Issues

Before this Court, the Johnsons assert two errors by the PUC.

First, the Johnsons maintain that the PUC lacks jurisdiction to decide whether Duquesne Light violated Section 1501 of the Public Utility Code, 66 Pa.C.S. § 1501. The Johnsons observe that they have not alleged any claim under Section 1501 or any claim that Duquesne Light violated Section 1501. The Johnsons further aver that even if they had asserted a Section 1501 violation, the Trial Court would have original jurisdiction over that issue, and the PUC, therefore, would not have the requisite primary jurisdiction to decide whether Duquesne Light violated Section 1501. In addition, the Johnsons assert that the PUC cannot provide them with a complete and adequate remedy for Duquesne Light's alleged misconduct.

Second, regarding their request for reconsideration, the Johnsons contend the PUC erred in concluding that they failed to raise any new or novel issue. They insist that the following issues were new or novel, in that the Johnsons had not previously raised them in response to Duquesne Light's exceptions to the ALJ's decision: (1) that the Trial Court would have primary jurisdiction to determine whether Duquesne Light violated Section 1501, if the Johnsons had alleged such a violation; (2) that the PUC cannot provide the Johnsons with a full and adequate

> 66 Pa. C.S. §§ 101-3316,] and its own regulations unless [the] PUC's interpretations are clearly erroneous. . . . We may not substitute our judgment for that of [the] PUC []when substantial evidence supports the PUC's decision on a matter within [its] expertise.[] . . . []Judicial deference is even more necessary when the statutory scheme is technically complex.[] . . . On issues of law, []our standard of review is de novo and our scope of review is plenary.[] . . .

*Retail Energy Supply Ass'n v. Pa. Pub. Util. Comm'n*, 185 A.3d 1206, 1220 (Pa. Cmwlth. 2018) (internal citations and quotation marks omitted).

6

remedy, because it cannot award damages; (3) relatedly, that a finding by the PUC that Duquesne Light violated Section 1501 would not help to resolve the Johnsons' common law claims against Duquesne Light and would instead waste time and resources; and (4) that the PUC lacks jurisdiction over property rights claims, which the Johnsons posit are the basis of their Tort Action against Duquesne Light.

## III. Discussion

### A. PUC Jurisdiction

Section 1501 of the Public Utility Code provides, in relevant part:

> Every public utility shall furnish and maintain adequate, efficient, safe, and reasonable service and facilities, and shall make all such repairs, changes, alterations, substitutions, extensions, and improvements in or to such service and facilities as shall be necessary or proper for the accommodation, convenience, and safety of its patrons, employees, and the public. Such service also shall be reasonably continuous and without unreasonable interruptions or delay. Such service and facilities shall be in conformity with the regulations and orders of the [PUC].

66 Pa.C.S. § 1501. The Johnsons maintain that the PUC lacks jurisdiction to decide whether Duquesne Light violated Section 1501 because they have not alleged any claim under Section 1501 or any claim that Duquesne Light violated Section 1501. They posit that they were not required to plead a claim under Section 1501 in order to pursue their Tort Action, because common law tort remedies are separate from, in addition to, and not supplanted by, the Public Utility Code. Johnsons' Br. at 18-19 (first quoting Section 103(c) of the PUC's regulations, 52 Pa. Code § 103(c) (providing that the PUC regulations do not "abridge or alter the existing rights of action or remedies in equity or under common or statutory law"); then quoting

7

Section 3309(a) of the Public Utility Code, 66 Pa.C.S. § 3309(a) (providing that "[t]he liability of public utilities . . . for negligence, as heretofore established by statute or by common law, shall not be held or construed to be altered or repealed by" the Public Utility Code); then quoting *Schweitzer v. Rockwell Int'l*, 586 A.2d 383, 391 (Pa. Super. 1990)[4] (stating that "[c]ommon law rights existing before a statute is passed continue to exist once the statute is enacted"); and then quoting *Hoch v. Phila. Elec. Co.*, 492 A.2d 27, 31-32 (Pa. Super. 1985) (stating that the Public Utility Code did not "provide exclusive remedies for compensating" a petitioner for damages)).

The Johnsons insist that their Tort Action alleges only common law duties of Duquesne Light and thus does not implicate any provision of service subject to Section 1501. The two are not mutually exclusive, however. *See Elkin v. Bell Tel. Co.*, 420 A.2d 371, 375-76 (Pa. 1980) (discussing the application of the primary jurisdiction doctrine in matters where both a court and an agency "must each play roles in the adjudication of certain matters"). The Johnsons themselves implicitly acknowledge as much, as does the PUC. *See* Johnsons' Br. at 20 (averring that "[d]etermining whether Duquesne [Light] provided 'reasonable service' under [Section] 1501 would not resolve, and is irrelevant to, [the Johnsons'] tort claims"); PUC's Br. at 34-35 (explaining that the PUC's "jurisdiction to decide Duquesne [Light]'s duties with respect to transmission line siting and communications to the public does not in any way abridge or alter [the Johnsons'] rights of action under common law. They can still pursue their tort claims" in the Trial Court.). Thus, the issue before the PUC is not whether the Johnsons may continue to pursue their Tort

---

[4] Although this Court is not bound by decisions of the Superior Court, we may consider them as persuasive authority where they address analogous issues. *Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

Action in the Trial Court, but rather, whether their complaint in the Tort Action pleaded conduct by Duquesne Light falling within the parameters of Section 1501 such that the PUC has jurisdiction over that alleged conduct through the Formal Complaint. The PUC concluded that Section 1501 applies and that the PUC has jurisdiction over Duquesne Light's alleged conduct that falls within Section 1501's ambit. We disagree.

Section 102 of the Public Utility Code defines "service," in pertinent part, as follows:

> "Service." Used in its broadest and most inclusive sense, includes any and all acts done, rendered, or performed, and any and all things furnished or supplied, and any and all facilities used, furnished, or supplied by public utilities . . . *in the performance of their duties under this part* to their patrons, employees, other public utilities, and the public, as well as the interchange of facilities between two or more of them . . . .

66 Pa.C.S. § 102 (emphasis added). Facially, then, this definition applies to all aspects of Duquesne Light's conduct in *performing its duties* to determine the placement of a high voltage transmission line and to provide electricity to the public. However, Section 102 does not define the extent of Duquesne Light's "duties" regarding notice to affected property owners and the public regarding the placement of high voltage transmission lines. *Id.*

Notably, as the PUC correctly observes, Section 57.91 of its regulations "addresses disclosure of eminent domain power of electric utilities and sets forth a utility's obligations with respect to notifications to affected property owners." PUC's Br. at 31 (citing 52 Pa. Code § 57.91). Section 57.91 requires that an electric utility seeking to acquire a transmission line right-of-way must first provide the property owner with written notice at least 15 days before contacting the property

9

owner to negotiate for the right-of-way. 52 Pa. Code § 57.91(a). However, Section 57.91 does not speak to a utility's duty, if any, under common law principles relating to the reasonableness of its conduct in choosing when to inform property owners that their property is one of several being considered for potential future location of a high voltage transmission line.

Moreover, the Johnsons maintain that even if they had alleged conduct potentially subject to PUC regulation under Section 1501, the Trial Court would have original jurisdiction over that issue, and the PUC would not have primary jurisdiction to decide whether Duquesne Light violated Section 1501. We agree.

In *Elkin*, the Pennsylvania Supreme Court explained that the doctrine of primary jurisdiction serves three purposes: (1) providing the benefit of an agency's expertise in complex matters, (2) giving effect to the legislature's intent in conferring power on the agency, and (3) promoting "consistency and uniformity" regarding administrative policy. 420 A.2d at 376. As specifically applicable here, our Supreme Court has held that primary jurisdiction lies with the PUC in matters relating to "location of utility facilities" in order to assure uniformity in regulating a utility's conduct. *PPL Elec. Utils. Corp. v. City of Lancaster*, 214 A.3d 639, 650 (Pa. 2019). In this regard, our Supreme Court in *City of Lancaster* explained that the legislature "plainly intended that discretionary decision-making be vested in one regulatory body, in furtherance of uniformity of application[, which] would be confounded by inviting hundreds of municipalities to create their own patchwork of 'supplementary' regulations to enforce." 214 A.3d at 656.

The PUC argues that its exercise of "jurisdiction is appropriate under both *Elkin* and *City of Lancaster* as it satisfies all three purposes of the doctrine of primary jurisdiction" by providing the Trial Court with the benefit of the PUC's

10

expertise on issues relating to electrical transmission line location, serving the legislative intent to vest exclusive authority over the location of public utility facilities in the PUC, and promoting uniformity with respect to siting matters. PUC's Br. at 30-31. Most specifically, the PUC posits that "uniformity is served by having decision-making in such matters vested in the [PUC] and would be frustrated by having 67 county courts 'creat[ing] their own patchwork of "supplementary" regulations to enforce. . . .'" *Id.* at 31 (quoting *City of Lancaster*, 214 A.3d at 656). We cannot agree.

In *Poorbaugh v. Pennsylvania Public Utility Commission*, 666 A.2d 744 (Pa. Cmwlth. 1995), this Court concluded that the PUC lacked primary jurisdiction over a negligence claim against a utility that allegedly caused an "oversurge of electricity which resulted in a fire." *Id.* at 751. Notably, even though we determined that the subject matter of the tort claim at issue was encompassed by the Public Utility Code, this Court concluded that the claim in *Poorbaugh* was "not a complex matter requiring the special expertise of the PUC in order to resolve it . . . ," and a judge or jury would be able to determine whether the utility had breached a duty of care owed to a customer and thereby caused the fire. *Id.* (distinguishing *Elkin*). Moreover, this Court stressed that the claim in *Poorbaugh* "[did] not involve the need for uniformity and consistency of agency policy. Rather, it focuse[d] only upon the supply of electricity to one . . . customer on one particular occasion." *Id.* (further distinguishing *Elkin*). We similarly conclude here that allowing a county court or a jury to determine Duquesne Light's duties under common law negligence principles regarding the timing and extent of notice to property owners and the public of an electric power transmission line's possible location under the particularized facts and circumstances of the Johnsons'

11

individualized claim will not directly contravene the legislative intent, nor will it create the kind of patchwork of individual regulations that the Public Utility Code was intended to avoid. *See Morrow v. Bell Tel. Co.*, 479 A.2d 548, 551 (Pa. Super. 1984) (explaining that "courts retain jurisdiction of a suit for damages based on negligence . . . wherein a utility's performance of its legally imposed and contractually adopted obligations are examined and applied to a given set of facts") (quoting *Litman v. Peoples Nat. Gas Co.*, 449 A.2d 720, 723 (Pa. Super. 1982)); *Behrend v. Bell Tel. Co.*, 363 A.2d 1152, 1158 (Pa. Super. 1976), v*acated & remanded on other grounds*, 374 A.2d 536 (Pa. 1977) (additional quotation marks omitted)); *DiSanto v. Dauphin Consol. Water Supply Co.*, 436 A.2d 197, 199 (Pa. Super. 1981) (same) (quoting *Behrend*).

For the foregoing reasons, we conclude that the PUC erred in determining that it had jurisdiction to consider Duquesne Light's duties in providing notice to the Johnsons and the public regarding possible locations of its planned electrical transmission line. Accordingly, we reverse the PUC's order of December 21, 2023.

The Johnsons also requested in their Motion for Determination that the PUC transfer the matter "back" to the Trial Court. RR at 174a. We note, however, that the Trial Court did not actually transfer any part of the action to the PUC. It merely held the Tort Action in abeyance until the PUC made a determination of Duquesne Light's duty, if any, to the Johnsons under the Public Utility Code in relation to the conduct alleged in the Tort Action. As a result, the Johnsons were forced to file a separate complaint with the PUC in order to trigger a determination of the PUC's jurisdiction over Duquesne Light's conduct as alleged in the Tort Action. We further observe, as noted above, that the PUC's order denying

12

reconsideration also closed the Johnsons' Formal Complaint, and the Johnsons have not sought review regarding that part of the order. Under these circumstances, there is nothing to transfer to the Trial Court.

## B. Denial of Reconsideration

In their second argument, the Johnsons assert that the PUC should have granted reconsideration of its December 21, 2023 order, because it erred in concluding that the Johnsons had offered no new arguments in their reconsideration request. In light of our disposition of the jurisdictional issue, however, the Johnsons' request for reconsideration is moot. Accordingly, we vacate the PUC's order denying reconsideration.

## IV. Conclusion

Based on the foregoing discussion, the PUC's order dated December 21, 2023 is reversed. The PUC's order dated February 1, 2024 is vacated as moot.

_____
CHRISTINE FIZZANO CANNON, Judge

13

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Charles Johnson and Laura Johnson, :
                             Petitioners :
                                              :
        v. :
                                              :
Pennsylvania Public Utility :
Commission, : No. 192 C.D. 2024
                         Respondent :

# **O R D E R**

AND NOW, this 15th day of April, 2025, the order of the Pennsylvania Public Utility Commission (PUC) dated December 21, 2023 is REVERSED.  The PUC's order dated February 1, 2024 is VACATED as moot.

_____
CHRISTINE FIZZANO CANNON, Judge